GLENN *v.* DORSHEIMER and others.[1]

SAME *v.* HUNT.

SAME *v.* LIGGETT.

SAME *v.* FOY.

SAME *v.* PRIEST.

SAME *v.* DAUSMAN.

SAME *v.* VON PHUL.

SAME *v.* SCOTT and another.

SAME *v.* TAUSSIG and another.

SAME *v.* TRIPLETT.

SAME *v.* DIMMOCK and another.

SAME *v.* NOONAN and others.

SAME *v.* LUCAS and others.

SAME *v.* LOCKWOOD and others.

(*Circuit Court, E. D. Missouri.* April 9, 1885.)

1. STATUTE OF LIMITATIONS — LIABILITY OF STOCKHOLDERS IN CORPORATION WHICH HAS CEASED TO DO BUSINESS.

Where an insolvent corporation ceases to do business, and assigns all its property, including unpaid stock subscriptions, to trustees for the benefit of its creditors, the liability of its stockholders at once becomes absolute, and the statute of limitations begins to run in their favor, and against such creditors and trustees, immediately.

2. SAME—CIRCUITOUS METHOD OF COLLECTION.

Where the law furnishes a party with a simple method of proceeding against an ultimate debtor, he cannot prevent the statute of limitations from running against him by attempting to collect his debts by a circuitous legal proceeding.

Demurrers to Bills and Petitions.

The demurrers in all the above-entitled cases were passed upon in the following opinion. The period within which suits of this character must be brought, under the Missouri Statutes, (section 3230,) is five years. The other material facts are sufficiently stated in the opinion of the court.

*T. K. Skinker,* for plaintiff.

*W. H. Clopton,* for Dorsheimer, Foy, Priest, Lucas, and others.

*C. M. Napton,* for Hunt.

*Smith & Harrison,* for Liggett and Dausman.

*Walker & Walker,* for Von Phul.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

*Wilbur F. Boyle*, for Scott and others.

*Geo. W. Taussig*, for Taussig and others.

*Thos. C. Fletcher* and *Geo. D. Reynolds*, for Triplett, Noonan, and others.

*Dryden & Dryden*, for Dimmock and others.

*Noble & Orrick*, for Lockwood and others.

BREWER, J., (*orally*.) There is a confused mass of law in the books bearing on the questions which are involved in these cases. In a general way, the facts as stated in the petitions in the law cases, and the bills in the equity suits, are that the National Express Company was organized on the twelfth day of December, 1865; it continued in business until the twentieth day of September, 1866, less than one year. The defendants are charged as stockholders in that corporation. An assignment was made of all the properties of the company, all debts due to it, whether from stock subscriptions or otherwise. This assignment was made on the twentieth of September, 1866. Nothing, then, seems to have been done until November 28, 1871, more than five years thereafter, when one creditor brought his bill in the chancery court of Richmond, Virginia, in behalf of himself and other creditors, to establish his and their claims against the company, and compel an assessment upon the stockholders. These proceedings terminated in a decree in that court on the fourteenth day of December, 1880, more than nine years thereafter, by which debts were established against the company to the amount of half a million dollars and over, an assessment of $30 a share ordered, the assignees removed, and the present plaintiff appointed as trustee. Between three and four years after that, these suits were commenced in this court; so that 18 years after the established insolvency of the company, its cessation of business, its assignment of its property, for the first time these defendant stockholders are notified that they have to pay something to discharge the debts of the corporation.

Passing all other defenses, the single one that we shall notice is that of the statute of limitations. These subscriptions, as I say, were payable on the call of the corporation; and the first call was made in 1880. So it is argued by counsel for the trustee that the statute of limitations begins to run then, and then only; that the obligation of the stockholders is a conditional obligation, becoming absolute only when the call has been made. On the other hand, counsel for the defendant read to us some cases in Pennsylvania, which affirm that the obligation of stockholders in a corporation similar to the one before us, is like the obligation of one who has given a note payable upon demand, where the statute of limitations commences to run within a reasonable time, and it is assumed that the demand is, or must be, made at once. I cannot assent to that doctrine as broadly as stated by the supreme court of Pennsylvania, and I think the court in Mississippi has drawn a wise distinction. The obligation in the first instance is a conditional obligation. The stockholders are not

to pay until a call has been made. As was suggested in the argument, these debts due by the stockholders to the corporation are its assets, and furnish its means for transacting business, and so long as the corporation is a going concern, doing business, it may not need to have these obligations called in; and so, while it is a going concern, I think it is fair to say, as is said by the supreme court of Mississippi, that theirs is a conditional obligation, and that while the corporation continues to transact business, whether 5, 15, or 50 years, the stockholders' liability continues and becomes absolute only after a call is made. But that is not this case, and the court in Mississippi draws the distinction very nicely. In 1866 this corporation ceased to do business. It ceased to be a going concern. It turned over its property, including the debts due from its stockholders, to the assignees, to collect its debts, dispose of its property, and pay its creditors. Whenever such a cessation of business occurs, it seems to me fair to say that the liability of the stockholders becomes absolute, —a fixed, unconditional obligation. And, although no call be made by the company, or by the assignees, yet these debts from the stockholders could have been reached by the creditors. That seems to be settled by the decision in *Ogilvie* v. *Insurance Co.* 22 How. 380, where the supreme court held that creditors, who had reduced their claims to judgment against the corporation, might proceed directly by bill against one or more stockholders. The language is this:

"The objection made to the bill, for want of proper parties, is equally untenable. The creditors of the corporation are seeking satisfaction out of the assets of the company, to which the defendants are debtors. If the debts attached are sufficient to pay their demands, the creditors need look no further. They are not bound to settle up all the affairs of this corporation, and the equities between its various stockholders, partners, proprietors, or debtors. If A. is bound to pay his debt to the corporation in order to satisfy its creditors, he cannot defend himself by pleading that these complainants might have got their satisfaction out of B."

The court adds further:

"It is true, if it be necessary to a complete satisfaction to the complainants that the corporation be treated as an insolvent, the court may appoint a receiver, with authority to collect and receive all the debts due to the company and administer upon its assets, and in this way stockholders or debtors may be made to contribute."

While such is a proper proceeding, of course, yet the court affirms the right of a creditor to reduce his claim to judgment in a court of law and proceed against one or more stockholders; and that which is true of one creditor is true of all. In the aggregate, all the creditors can have no greater rights than as individual creditors. So these creditors could have reduced their claims against the corporation to a judgment, immediately after the assignment in 1866, through the simple processes of an ordinary action at law, and then brought their bill against the various stockholders to enforce payment here or elsewhere.

. The same doctrine is recognized by Judge McCrary in the case of *Holmes* v. *Sherwood*, 3 McCrary, 405, S. C. 16 Fed. Rep. 725, and is the settled law of federal courts.

The case of *Scovill* v. *Thayer*, 105 U. S. 143, relied on by counsel for plaintiff, does not at all oppose this view, and does not overrule the case of *Ogilvie* v. *Insurance Co.*, for there the contract between the corporation and the stockholder was that the stock was to be treated as fully paid, although in fact it was only partially paid; and, as between the corporation and its stockholders, that was a valid contract, which the corporation as such could not repudiate, and it needed the interposition of a court of equity or a court of bankruptcy to establish the fact that, as between the creditors and the stockholders, that contract was no protection to the stockholders. Yet even there the court says, (and counsel rely rather on some *dicta* in the opinion than on the actual decision:)

"The rule is this. It is well settled that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it, and the court will do what it is the duty of the company to do. But under such circumstances, [and to this our attention was especially called,] before there is any obligation upon the stockholder to pay, without an assessment and call by the company, there must be an order of a court of competent jurisdiction, or at the very least some authorized demand upon him, for payment; and it is clear the statute of limitations does not begin to run in his favor until such order or demand."

Counsel emphasized the words "some order of a court of competent jurisdiction," but there is added to it "some authorized demand." When a creditor, having his claim reduced to judgment, commences his suit in equity, that is an authorized demand.

A distinction should be noticed between this case, where the stockholders, not having paid their subscriptions in full, are simply debtors to the company for the unpaid portions, and those cases where a double liability is by statute cast upon the stockholders, in reference to which I find, in some of the opinions, language inappropriate to a case of this kind; and also those other cases, some of which went from Georgia to the supreme court, where a stockholder is held to be directly liable to certain creditors of the corporation; in one case, the stockholders being adjudged directly liable to the holders of bills issued by the bank in which they were stockholders. Of course, those are cases involving other considerations.

It was said in the argument, and our attention was called to the case of *Fogg* v. *Railroad Co.* 17 Fed. Rep. 871, decided in this court two or three years ago, that these creditors pursued an ordinary and proper way of enforcing their claims, and having pursued that ordinary and proper way, and as to each step in that way keeping themselves within the limits of the statute of limitations, they are not prejudiced by the delay. Thus, within six years after the assignment, they commenced proceedings to establish their claims against the

company, and they proceeded in the ordinary course of litigation in the chancery court and obtained an order for a call in that court, and then sued on that call within six years after it was made, and so, there being no statute of limitations interfering with each separate step in the course pursued, the courts must say that the statute of limitations does not cut off this action. That case of *Fogg* v. *Railroad Co.* does not justify any such conclusion as that. That was a case where one corporation having property turned it over to another, and the creditor, instead of pursuing directly the grantee company, established his claim in an action at law against the grantor company, and then by a bill in equity, filed at once, proceeded against the grantee company. The statute was held no bar. But here the creditor in the first instance had an open, ordinary, direct, and simple way of collecting his debts from the stockholder, and I do not think that he may follow any other way that he sees fit, and say that, although the statute of limitations would have cut off the simple and direct way, yet it did not happen to interfere with the various steps pursued in the way around to reach the stockholders; for certainly there should be some limit. If this theory were correct the stockholder might at the end of 18 years, as in this case, or of 25, 30, or 50 years, be confronted with a claim. Where the law furnishes to a party a simple method of proceeding against an ultimate debtor, and he fails to pursue that, I think such debtor can appeal to the statute of limitations as a protection.

There are many cases involving these questions. As I said in the outset, there is a confused mass of learning in the books as to the liabilities of stockholders to creditors of corporations. We have looked at the authorities carefully, and studied the questions as fully as we have had time, and our conclusions are that the demurrers must all be sustained.

Treat, J., (*orally.*) I concur most fully in the judgment announced. I emphasize one proposition. Here was a corporation of short continuance; and I think, under the very terms of the act of corporation, only two dollars a share were primarily to be paid up. If any more was to be thereafter paid, it was to be paid when the directors of the corporation called therefor. The original amount was paid, and the parties rested there. It seems to have been a very unfortunate concern; for it had hardly begun operating before, practically, it was dissolved; and the amount of indebtedness shown by the proceedings in chancery at Richmond was incurred—to what end we know not, and it is immaterial. Three assignees were appointed, with full authority to collect all the assets and pay the obligations of the company; the stockholders being scattered, it seems, all over the country, at least as far as Missouri. There is nothing to indicate that they were to be called upon, or charged, except through calls, with the indebtedness to the original corporation. If assignees were

substituted to the rights of the original corporation, to call in these assessments, why did not these creditors move? They could have asked and demanded that the assignees should do—what? Proceed at once to make a call. But they did not do it. They filed a bill in 1871, more than five years afterwards, and, for reasons unknown to this court, that was prolonged until 1880, when that court thought there should be a call on the stockholders to meet these demands, and then the substituted assignees rested until 1884. Under the statutes of limitations, which are statutes of repose, and under the theory of laches in equity, a man cannot patch out, by proceedings of this nature, an indefinite extension of time. As stated by my brother judge, if he can do it for 18 years, or more, he may do it for 50 years. The right of the creditor existed against the corporation at the time the assignment was made. Why did not he pursue it? He had the right so to do. He never did it. He must take the consequences of the delay.