## McALEER *et al. v.* CLAY COUNTY.

*(Circuit Court, S. D. Iowa, C. D.* June 16, 1890.)

**MANDAMUS—JUDGMENT—LIMITATIONS.**
The holders of a judgment against a county obtained a writ of *mandamus* commanding the supervisors to levy a tax to discharge the judgment. The decree awarding the writ was reversed by the supreme court, and the cause remanded, whereupon an amended petition for *mandamus* was filed. Pending the proceedings in the supreme court the period during which, under Code Iowa, § 3025, an execution could issue on the judgment, expired. *Held,* that the collection of the judgment could not be enforced by *mandamus,* since the judgment was no longer operative, and the pendency of the *mandamus* proceedings created no lien.

At Law. Proceedings for *mandamus.* On demurrer to answer.
*Mitchell & Dudley* and *Hughes & Hastings,* for plaintiffs.
*A. C. Parker,* for defendant.

SHIRAS, J. On the 2d day of October, 1864, a judgment was rendered in this court in favor of Michael McAleer, and against Clay county, Iowa, for the sum of $9,172.50. On the 2d day of May, 1881, an information for a *mandamus* was filed by Hugh McAleer and Hugh McAleer, Jr., administrators of the estate of Michael McAleer, who had died in the state of New York on February 22, 1881, in which it was charged that the judgment in question remained in force, that a large part thereof remained unpaid, that an execution had been issued and returned unsatisfied, that it was the duty of the county board of supervisors to levy a tax for the payment of the portion of the judgment remaining unpaid, and praying that a writ of *mandamus* be issued, commanding the supervisors to levy, collect, and pay over a tax sufficient to discharge said judgment in full. On the 15th day of May, 1882, the court, upon the hearing, granted a writ of *mandamus* requiring the board of supervisors to levy a tax of one mill on the dollar of the assessed value of the taxable property in Clay county for the year 1882, and to collect and pay the same upon the McAleer judgment, and that they levy and collect a tax of one mill for each succeeding year until the said judgment, interest, and costs should be paid in full. Upon a writ of error the supreme court reversed this judgment, on the ground that the answer to the information averred that the whole of the six-mill levy for the year 1882, which was the limit of taxation permissible under the statute of Iowa, was needed to meet the ordinary expenses of the county, and that the court could not require the county to set aside any part of the levy to pay the judgment when the whole of the levy was needed to meet the current expenses of the county. See 115 U. S. 616, 6 Sup. Ct. Rep. 199. The mandate showing the reversal of the judgment by the supreme court was filed in this court May 17, 1886. On the 13th day of May, 1890, an amendment to the information was filed, in which it was averred that, if the full levy of six mills on the dollar of the taxable property in the county be levied each year, there will be realized therefrom a sum sufficient to defray the ordinary current expenses of

the county, and leave a yearly surplus which may be applied to the payment of the judgment in favor of McAleer; and, further, that there is now in the treasury of the county the sum of $5,000 not appropriated to the payment of current expenses, which the board of supervisors refuse to apply to the payment of said judgment; and the relators therefore ask an order that the county officials be required to levy annually a tax of six mills, and pay over the surplus left of the amounts realized, after defraying the necessary current expenses, until the judgment is fully paid. In the second division of the answer filed to this amended information, it is averred that, before the filing of said amended information, the judgment against the county had been barred and extinguished by the operation of the statute of limitations of the state of Iowa; that the period of limitation applicable to judgments of courts of record is 20 years; that the judgment was rendered in 1864, and had not been revived by any action in any court since that date; and that, consequently, these proceedings for the enforcement of the judgment are abated. To this division of the answer the relators have demurred, and thereby is presented the question of the effect upon the proceedings of the admitted fact that by lapse of time the judgment sought to be collected has become barred.

Under the provisions of section 3025 of the Code of Iowa, executions may issue at any time before the judgment is barred by the statute of limitations. When the 20 years from the date of the judgment expired, the right to the issuance of a writ of execution terminated. If, however, before the 20 years had expired, an execution had been issued, and a levy had been made thereunder, the lien thereby acquired would not have been ended by the expiration of the statutory limitation, but the judgment creditor would have been entitled to the benefit of all rights acquired by the levy of the execution during its life-time, and to such auxiliary process as might be necessary to enforce payment out of the property thus subjected to the lien of the judgment and execution while the same were in life. Counsel for plaintiffs claim that the proceedings for *mandamus* are to be deemed to be of the nature of an execution, and that as the original information was filed and service had long before the judgment was barred, it is still open to the plaintiffs to pursue the relief sought by the information. Conceding, for the sake of the argument, that the filing of the information is to be deemed to be the equivalent of the issuance of a writ of execution, it does not follow that thereby any lien or other right has been acquired which remains in existence after the judgment has ceased to be operative and enforceable. If, during the life-time of an execution, the same is levied upon property, thereby a new right is created in the execution plaintiff. The levy of the execution is *prima facie* a satisfaction of the judgment; and the lien, whether legal, equitable, or statutory, created by the levy of an execution, is not defeated by the mere fact that after the creation of the lien the period of time has elapsed which terminates the right to the issuance of an original writ of execution upon the judgment, or which bars a new action upon the judgment. The mere filing of an information seeking a writ of

*mandamus* to enforce the levy of a tax for the payment of a judgment creates no lien upon property  The judgment rendered in 1882, directing the levy of a tax in that and the succeeding years, has been wholly set aside. No lien or right to the levy of a tax was then created. The right to the issuance of a *mandamus* for the purposes set forth in the amended information filed May 13, 1890, is based upon the fact that there exists in favor of plaintiffs an operative and enforceable judgment against the county. The aid of the court is sought to put in motion the taxing power of the county through its officials, in order to realize funds sufficient to pay this judgment. The answer shows that before the amended information was filed the judgment had become inoperative and nonenforceable by reason of the lapse of time creating a statutory bar to its enforcement. The action sought by the present information is not for the preservation and enforcement of a lien or right coming into existence before the judgment became barred. If the facts were that, by operation of a tax ordered to be levied by a judgment in *mandamus* rendered during the life-time of the judgment, there was a fund realized, and in the hands of the county, properly applicable to the payment of the judgment, it might well be that the court would enforce the application of such fund to the payment of the judgment, even though the bar of the statute had become applicable. The present proceedings are wholly prospective, and it is now sought to compel the county officials to hereafter levy and collect a tax, or to hereafter apply money in the treasury to the payment of the judgment in question. Unless there exists in favor of the plaintiff a valid and enforceable judgment against the county, there is no foundation for such action on part of the court. If for any reason the judgment has become inoperative or has been barred, no ground for its enforcement exists, either by way of execution or other equivalent proceeding. In the language of the supreme court in *Ross* v. *Duval*, 13 Pet. 44, "it cannot be supposed that the legislature would bar an action on a judgment, and still authorize an execution to be issued on it." If the right to an execution is barred, the right to a writ of *mandamus* to serve the purposes of an execution must be likewise barred. The demurrer to the second division of the answer filed by the county officials is therefore overruled.