CLEVELAND, C. & S. RY. CO. v. KNICKERBOCKER TRUST CO. OF NEW YORK et al.

(Circuit Court, N. D. Ohio, E. D.    April 12, 1898.)

No. 5,156.

1. RAILROADS—MECHANIC'S LIEN—OHIO RAILROAD LIEN LAW—BRIDGES.
    A lien upon a railroad bridge in Ohio for work performed and material furnished cannot be obtained under the mechanic's lien law, but must be obtained under the act of April 10, 1884, known as the "Railroad Lien Law," under which the lien must be filed within 40 days after the account is closed.

2. SAME.
    A railroad bridge becomes a part of the permanent structure of a railroad, and a mechanic's lien cannot be maintained for work performed and material furnished for a bridge as against liens created by prior mortgages on the railroad.

3. SAME—PRIORITY OF CLAIM FOR NECESSARY REPAIRS.
    Where a railroad bridge became so defective that it was unsafe to run trains over it, and repairs were necessary to keep the railroad a going concern, those who performed the work and furnished the material necessary in repairing the bridge are entitled, on the insolvency of the company and the appointment of a receiver, to priority over the mortgage bonds, without showing any diversion of income, and such priority may be allowed, though more than six months elapsed between the time the work was done and the appointment of a receiver.

4. SAME.
    Such priority is allowed as against liens created by mortgages placed on different branches of the consolidated road when they were independent corporations.

5. SAME—ORIGINAL CONSTRUCTION.
    The term "original construction" (as distinguished from repairs) has a technical meaning, and is that construction of bridges, grades, culverts, rails, ties, docks, etc., that is necessary to be done before the road can be opened, not such structures as are intended to replace old and worn out counterparts.

Baldwin & Shields, for complainant.

C. E. Pennewell, Amos Denison, and F. A. Durhan, for intervener, T. B. Townsend Brick & Contracting Co.

RICKS, District Judge. The intervener seeks to obtain a preferential lien for work done and performed and material furnished for the Cleveland, Canton & Southern Railroad Company upon the pier and abutments of the Independence street bridge over the Cuyahoga river, in the city of Cleveland, and, with that end in view, sets up three grounds for recovery: (1) A mechanic's lien is asserted. (2) It is asserted that at least a portion of its claim is preferred under the order of the court appointing the receiver, in which six months' claims for material, supplies, and labor are to be paid out of the net income of the road in the hands of the receivers. (3) That the labor performed and material furnished were necessary to keep the road a going concern, and that, in equity, they are entitled to payment out of the corpus.

In my opinion, the mechanic's lien placed upon the bridge upon which the work was performed and material furnished is ineffectual to charge the railroad company, for the reason that a claim against a railroad cannot be obtained under the general mechanic's lien law, but must be obtained under the act of April 10, 1884, and known as the "Railroad Lien Law." According to the provisions of that law, the lien must be filed within 40 days after the account is closed. The lien upon which reliance is placed in this case was not filed until after the expiration of 40 days. The last work was done June 20, 1893, and the affidavit was not filed until August 16th thereafter. The Townsend Company also failed to serve notice of its alleged lien within 10 days after the filing thereof on the secretary or other officer of the company, as provided by the act referred to. See Commissioners v. Tommey, 115 U. S. 122, 5 Sup. Ct. 626, 1186; Industrial & Mining Guaranty Co. v. Electrical Supply Co., 16 U. S. App. 196, 7 C. C. A. 471, and 58 Fed. 732. Then, too, the mechanic's lien relied upon includes the Independence street bridge only as the property affected. The United States supreme court in the case of Porter v. Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, held that:

"The bridges become a part of the permanent structure of the railroad as much so as the rails laid upon the bridges or upon the railroad outside of the bridges." "Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after-acquired property, it is well settled in the decisions of this court that rails and other articles, which become affixed and a part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of bona fide creditors, as against any contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case."

If a specific contract made by the company giving a lien upon a bridge cannot be maintained as against mortgage lienors, certainly a mechanic's lien cannot be made more effectual for that purpose. Even if this lien can be maintained, it would be subordinate to all the mortgages executed by the company, and set up in the proceedings affecting the property of the railroad company in this court, because of their prior date.

2. The clause authorizing the payment of certain items of indebtedness by the receivers reads as follows:

"And the said receivers are hereby authorized to pay and discharge out of the net income of said railroad all unpaid traffic balances and the indebtedness of said company to its servants and employés, and for materials and supplies accruing within six months last past, and also the unpaid coupons, amounting in all to $4,000, due July 1, 1893, on the Coshocton & Southern Railroad line, and mentioned in the said bill of complaint."

The master found that, of the amount due for work and materials claimed in this case, the sum of $6,072 accrued within six months prior to the appointment of the receivers.     It is suggested that this amount is inaccurate, and that the amount due within six months is not so much as found by the master.     This claim is not founded upon proof, but upon the assumption that only one-half the estimate for March ($2,496) should be allowed.     In the absence of anything definite, the court will adopt the master's findings of facts.

If the character of this contract was such that the order of the court preferring labor and material men applies to it, only the sum of $6,072 could be paid by the receivers, and then it could only be paid out of the net income in their hands.     The evidence does not establish the fact that there is a net income in his hands applicable to the payment of said sum of $6,072 so reported by the master.     If it can be shown that there is sufficient net income in the hands of the receiver to pay this sum, I am of the opinion that the nature and character of the work done by the intervening creditor would entitle it to payment out of such income.     But there is nothing in that order which would entitle it to payment out of the corpus of the property, to the prejudice of the rights of mortgage creditors.     If the claim of priority is justified, it must be on the grounds of superior equity.

The International Trust Company, representing certain of the bonds secured by mortgage on the property of the railroad company, by its solicitors, alleges that the contract under which the labor was performed and material furnished was a contract for original construction made in April, 1892, about 18 months before the receivers were appointed, and more than two-thirds of the work done under it more than 6 months before the receivers were appointed,—a contract made with full knowledge of the existence of the bonds and mortgages upon the property,—and that no equity arises as against these mortgages; and it asserts that the Hamilton Case, 134 U. S. 296, 10 Sup. Ct. 546, and other cases cited, are conclusive upon this point.     If the work of the intervener was original construction, within the view of the Hamilton Case, then there can be no priority.     The agreed statement of facts in this case is as follows:

"The old bridge at Independence street was built in 1880, and was a wooden structure.   In 1886 it was re-enforced by overhead trusses.   Later, it was necessary to support it by piling.   In 1892, because of the age and worn-out condition of the bridge, it became necessary, in order to safely operate the road, to replace the old bridge with a new one.   On application to the city for permission to put a new bridge over the river, the city required a draw to be put in the new bridge, and refused to permit the old bridge to be replaced by anything but a drawbridge, and thereupon the new bridge for which the pier was built by the intervener was constructed and took the place of the old one."

In my opinion, the replacement of the old bridge, whether the work was done by "force" work of the company or by contract with other

persons, was in all essentials necessary repairs, and not original construction. This agreement states that the old bridge had been re-enforced by overhead trusses. Later it was supported by piling. In 1892, because of the age and worn-out condition of the bridge, it became necessary, in order to safely operate the road, to replace the bridge with a new one. The city authorities required a swing bridge. But the new bridge was built to repair or replace the old one.

It is the history of all first-class roads that year after year the cheaper structures are replaced by better and more expensive structures; and the road gradually develops from a very inferior, improvised affair into the first-class, safe, and desirable road that is essential to the safety of passengers and economy of general traffic. The magnificent stone and iron bridges we see are not usually original structures, but are the outgrowth of constant improvements and repairs upon the original road. The term "original construction" has a technical meaning. It is that construction of bridges, grades, culverts, rails, ties, docks, etc., that is necessary to be done before the road can be opened, or before they can be occupied or used, not such structures as are intended to replace old and worn-out counterparts. It is contended, by way of further defense to this claim, that, even if it be shown that the work done by the intervener was a part of the necessary operating expense of the road, only so much of the account as accrued within six months prior to the appointment of the receivers can be made a charge against the corpus, and payable out of the proceeds of the sale, before the mortgage creditors are to be paid, and then only upon proof that there has been a diversion of the income of the road with the consent of the bondholders, either express or implied. On the other hand, the interveners insist that the subject of their account was necessary to keep the road a going concern, and that it is entitled, on the insolvency of the company and the appointment of a receiver, to priority over the mortgage bonds, without showing any diversion of income, and that such priority may be allowed, though much more than six months elapsed between the time the work was done and the appointment of the receivers.

The first matter to be determined is whether this work was necessary to keep the road a going concern. The Cleveland, Canton & Southern Railroad is composed of several constituent lines. These branch lines are feeders of the main line, which has its principal terminus at Cleveland. Both its passenger and freight stations are located north of the Independence street bridge. It is there that its principal connecting lines are met, and its principal traffic, both passenger and freight, is dependent upon this terminus.

If the Independence street bridge had become so defective that it was unsafe to run trains over it, all the traffic that would naturally go to or come from Cleveland would have been cut off. The agreed statements of facts in this case show that in 1892, because of the age and worn-out condition of the bridge, it became necessary, in order to safely operate the road, to replace the old bridge, and the city authorities would not permit the building of a common bridge, but required that it should be a drawbridge. There cannot

be a draw without a pier to support the draw span.    The repairs on the abutments became necessary by reason of the circumstances. No matter whether the Townsend Company did this work, or some one else did it, it was absolutely necessary, in my opinion, to the operation of the road, to preserve the property, to protect its franchises, and discharge its duties to the public.

It appears from the record that, by consent of the mortgage creditors, receiver's certificates have been issued to pay the bridge company for the iron superstructure of this bridge.    The court, and the mortgagees, by their consent, recognized the fact that the bridge company had a superior equity.    It would not be contended that the foundation for this bridge was less essential than the bridge-work proper.    If the mortgagees had taken possession of the road, they would have had the right to make such expenditures as were necessary to conserve and preserve the property, and such expenditures would be a charge against the corpus of the property. If the mortgagees can do this, the officers of the company, who, for the purposes of the bondholders, are the trustees and agents, can also do it, and even in duty bound to do it.

It being determined that this work was necessary to keep the property a going concern, we are to decide whether lack of proof of diversion, and the fact that more than six months expired between completion and the appointment of receivers, precludes recovery.    I think not.    This view is held in the case of New York Guaranty & Indemnity Co. v. Tacoma Ry. & Motor Co., 27 C. C. A. 550, 83 Fed. 365; Central Trust Co. v. East Tennessee, V. & G. R. Co., 26 C. C. A. 30, 80 Fed. 624 (in which Judge Lurton delivered the opinion); Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182–189; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; Atlantic Trust Co. v. Woodbridge C. & I. Co., 79 Fed. 39; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004; Hale v. Frost, 99 U. S. 389.

The principle upon which such preferences are allowed is very thoroughly discussed in the case of New York Guaranty & Indemnity Co. v. Tacoma Ry. & Motor Co., supra.    In this case, and the others cited, the application of the general rules as to preferential claims enunciated by the federal courts depends to a large degree upon the circumstances of the case.    While the fact that the labor performed and the material furnished in the case at bar resulted in lasting and valuable improvements to the property of the company, and so increased the security of the mortgagees, is not of itself sufficient ground for giving the claim a preference, it is an element and one of the circumstances which entitle the claimants, in my opinion, to priority over the mortgagees.    It is urged that in this administration suit the court has no power to make any claim not incurred in the operation of the property by the receivers a lien upon the property itself, or to give such priority over the mortgages.    If the court has no such power, it is because in this suit no mortgagee or underlying lienor asks for a sale of the prop-

erty. The supreme court, in the case of Railroad Co. v. Humphreys, 12 Sup. Ct. 787, did not pass upon "the action of the court.in making the appointment of receivers on the application of the mortgagor," because that question was not before it; but the theory that an insolvent railroad corporation may, in the public interest, and for the benefit of all its creditors, surrender its property to a court of equity, to be preserved and kept in operation until it can be disposed of according to the several private rights concerned, was not disapproved in that case. And in the cases of Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182, and Central Trust Co. v. Wabash St. L. & P. Ry. Co., 30 Fed. 332, there was a substantial approval of such a proceeding.

The right of the court to prefer the claim of the Townsend Company in this proceeding, so far as the equities are concerned, is not determined by an order of the court at the instance of the mortgagor railroad company, but rests upon the broad ground of superior equity, and such a preference may be given whether a so-called six-months claim order is made or not. In the case of New York Guaranty & Indemnity Co. v. Tacoma Ry. & Motor Co., 27 C. C. A. 550, 83 Fed. 365, no such order is made, and the preferred creditor did not file his intervening petition until after the sale was made and confirmed, and yet his claim was allowed. It is a well-recognized principle that the court has jurisdiction of a fund as long as it is in the custody of the court.

It is suggested that the divisional mortgagees cannot be subjected to loss of priority because brought into association with others by the bill. Referring to the fact that the Cleveland, Canton & Southern Railroad Company bought up the various branches or divisions which were theretofore independent corporations, and against which the several mortgagee debts set out in the bill obtained, it is said: All the debts, outstanding and unsecured, and debts of the present company, and the mortgages, except the last two, are superior to any right of the present company. It could create no lien on any of this property that would not be inferior to the prior mortgages. With the uniting of these properties by purchase, in the name of the present company, these mortgagees had nothing to do,—no power to prevent or promote it. Upon what principle, then, can the contracts of this company, in the operation of its entire system, or its purchases of material, or contracts for construction, become of better right or prior lien than these mortgages? Are the contracts for the operation or improvement of the Coshocton Branch, for instance, to be charged as a prior lien on the Waynesburg Branch, in whole or in part, and so on?· That objection was raised in the case of Central Trust Co. v. Wabash, St. L. & P. Ry. Co., supra, but the court overruled the objection, and say:

"For a clear understanding of these questions, it will be necessary to go back to the inception of this receivership. At that time there was a single corporation,—the Wabash, St. Louis & Pacific. It was a corporation made up by the consolidation, in 1879, of various minor corporations. After the consolidation by which the Wabash, St. Louis & Pacific was brought into being, it absorbed

still other roads by consolidation, and took possession of others by lease. It was an insolvent corporation, and it came into court pleading its insolvency, and asking the court to take possession of its entire property, and administer it for the benefit of all concerned. There was then but a single corporation, owning many pieces of property, having possession of others by lease, which separate pieces of property were, many of them, covered by underlying mortgages. As a single corporation, it was also in debt to an amount exceeding $3,000,000 of floating indebtedness, and yet of that character of indebtedness which, by the decision of the supreme court, was preferred to all mortgages. Thus the preferential debts of three millions and over were a prior lien upon all the roads belonging to the Wabash,—not a lien upon one division, and no lien upon another, but a lien upon each and all of them, prior in right to every mortgage, general or local, junior or senior. It made no difference where those obligations were incurred,—whether in the operation of one line or another. They were obligations of the single debtor, and enforceable in law against every part of its property. In a case of a complicated railroad system like this Wabash, not only were they at law the obligations of one debtor enforceable against all its property, but in equity also they were chargeable upon all its property."

Until proceedings are had, either in this case or in a consolidated cause wherein an order shall be made for the sale of the property, and out of which a fund shall arise, the court cannot give this intervening claimant such relief as will discharge his claim; but, having recognized an equitable priority in his favor, the court will exercise such jurisdiction as may be necessary in a proper case.