**INTERURBAN CONST. CO. et al. v. CENTRAL STATE BANK OF KIEFER et al.**

No. 8841—Opinion Filed June 24, 1919.

Rehearing Denied Nov. 4, 1919.

(Syllabus by the Court.)

**1. Railroads—Mortgages—Mechanics' Liens—Priorities—Limitation of Actions.**

In a suit by a mortgagee for its debt and to foreclose the mortgage given to secure the same, upon the property of a street railway company, the mortgagor, wherein a receiver was asked for and was appointed by order of the district court, directed to take charge of all the property, goods, moneys, and effects of said defendant and preserve the same until further order of the court or the judge thereof, and thereafter other mortgagees were allowed to intervene and filed their actions for debts and a foreclosure of

their mortgages upon the property of the defendant, then in the hands of the receiver, and more than one year thereafter claimants were allowed to intervene and file their action upon claims for labor and material furnished under the provisions of and to establish their respective liens under the provisions of Rev. Laws 1910, secs. 3868-3871, and where it is conceded that no suit was commenced on such claims within one year after the same accrued, nor was any intervening petition filed in the action brought by the mortgagee, on behalf of such claimants, within one year after such claims accrued, and that no notice was given by any of such claimants as required by section 3871. held, that the claims of such claimants to liens and the right to have the same enforced against the property of the defendant in the hands of the receiver and declared by the court to be prior to the liens of the mortgagees and ordered to be first paid by the receiver were barred by the terms of the statutes, supra.

**2. Same—Corporations—Receivers—Failure of Lien Holders to Sue or Intervene in Action.**

In a suit to foreclose a mortgage, and for the administration of the assets of the mortgagor, an insolvent corporation, a receiver for all its property was appointed and a reference made to a referee, but it was only by the decree subsequently made that the court showed its ulterior intent to make an equitable distribution of the funds among all the creditors and provided for notice to them to file their claims. Held: (a) That, until a decree appointing such referee, creditors were entitled to sue at law, and by judgment acquire priority in an equitable distribution of the property including that covered by the mortgage. (b) But where creditors base the right to have their claims adjudged to be liens prior to the liens of the mortgagees, under Rev. Laws 1910, secs. 3868-3871, and they fail to bring suit within one year from the accrual of such claims and to give the notice to the defendant provided for in the statute, and fail to intervene in the suit brought by the mortgagees to foreclose their lien upon the property of the defendant corporation within one year from the accrual of their claims, such right to a preference lien over that of the mortgagees provided in the statutes will be barred by the running of the limitation named in the statute.

**3. Same—Priorities—Net Income in Hands of Receiver—Proceeds of Sale.**

Where a court of equity at the suit of creditors acquires jurisdiction to establish priorities of liens upon and order a distribution of the proceeds arising from the sale of the property of an insolvent railway corporation, and certain creditors claim priority of payment of their claims to those of the mortgagees, because the claims of the former were for material and labor furnished for the betterment of the mortgaged property within six months next before such

property was placed in the hands of a receiver, who operated the railroad for about three years, at the expiration of which period he sold the same by order of the court, held: (a) Equity will decree a prior lien in favor of such claimants to that of the mortgage lien which was prior in point of time upon the net surplus income only, arising from the operation of the railroad by the receiver, and not upon the proceeds of the sale of the mortgaged property. (b) Where there was no diversion by the receiver of the income derived from the operation of the railroad to betterments of the property, and the entire amount of such income was expended by him in the payment of operating expenses and taxes, and after such payment there was no net income, but a deficit existed and was paid from the proceeds of the sale of the mortgaged property, it is further held; that, there being no net income in the hands of the receiver derived from the operation of the railroad, the claimants were not entitled to an equitable lien upon moneys in the hands of the receiver derived from the sale of the mortgaged property.

Error from District Court, Tulsa County: Conn Linn, Judge.

Action by the First National Bank of Tulsa, Okla., against the Oklahoma Union Traction Company, to foreclose a note and mortgage, in which a temporary receiver was appointed to take charge of defendant's property, and in which the Colonial Trust Company and the Central State Bank of Kiefer were allowed to file petitions in intervention against the defendant praying for foreclosure of mortgages against it, and in which the Interurban Construction Company and A. A. Small and G. B. Small filed their petitions in intervention against the defendant, to enforce mechanics' liens. Cause referred to a referee, whose report finding that claimants were not entitled to liens on defendant's property was confirmed by the court. Claimants' motions for new trial were overruled, and claimants bring error. Affirmed.

Geo. T. Brown, for plaintiffs in error.

Biddison & Campbell, for defendants in error.

JOHNSON, J. On September 21, 1910, the Oklahoma Union Traction Company gave a note and mortgage on its property to the First National Bank of Tulsa, Okla., for $6,918.

On December 9, 1911, the First National Bank commenced this action in the district court of Tulsa county against the Oklahoma Union Traction Company to recover the amount due on this note and to foreclose its mortgage. The bank asked for the appointment of a receiver, and the court ordered:

"That Percival E. Magee, of the county of Tulsa, and the state of Oklahoma, be appointed temporary receiver in said cause; that the amount of his bond as receiver be fixed at the sum of $5,000; and that, upon his qualification, such receiver take charge of all the property, goods, moneys, and effects of said defendant and preserve the same until the further order of the court or the judge thereof."

This was the only order made appointing a receiver. The receiver did take charge of all the property of the Oklahoma Union Traction Company.

On December 12, 1911, the Colonial Trust Company was permitted by the court to file its petition of intervention asking judgment against the Oklahoma Union Traction Company for $31,931, and also praying for the foreclosure of its mortgage against the property of the mortgagor.

On April 27, 1914, the Central State Bank of Kiefer, defendant in error, filed its petition of intervention in said suit asking a judgment against the Oklahoma Union Traction Company for $6,025, and for the foreclosure of its mortgage against the property of the Oklahoma Union Traction Company.

On June 1, 1914, the plaintiffs in error filed their petition of intervention in said cause asking judgment of $11,484, and alleging that in the year 1911 they furnished labor and material to the Oklahoma Union Traction Company to the amount of $11,484, alleging that this was due on June 1, 1911, and that they were entitled to a lien on the property of the Oklahoma Union Traction Company for that amount, and also asking that all other parties be barred from any right or interest in the property of the company.

Plaintiff in error A. A. Small in his petition of intervention asserts a claim of $1,896 on account of work and labor performed by him for the street railway company during the months of September, October, November, and December, 1911, in the equipment and operation of said railway company. The plaintiff in error G. B. Small in his petition of intervention asserts a claim in the sum of $700 for work and labor performed by him for said railway company during the months of April, May, June, July, August, September, October, and November, 1911, in the equipment and to facilitate the operation of said street railway. There is no dispute as to the amounts of these various claims, as will appear from the report of the referee.

The cause was afterwards referred to W. T. Tucker, referee, to try said cause and make a report to the court. He made his report on April 21, 1916, finding that the plaintiffs in error were not entitled to a lien on the property of the Oklahoma Union Traction Company.

Exceptions were duly saved to this report and presented to the referee and to the court in proper motions; but the report of the referee was, over the objections and exceptions of these plaintiffs in error, approved and confirmed by the court. Motions for new trial were overruled, and the judgment complained of herein was rendered, in pursuance of said report under date of June 30, 1916. Supersedeas bonds were given by these plaintiffs in error, and this appeal taken and lodged herein.

The plaintiffs assign error: (1) The trial court and referee erred in overruling the motions for new trial. (2) Trial court erred in approving, adopting, and confirming report of the referee. (3) The referee and trial court erred in overruling exceptions and objections of plaintiffs in error to the report, findings, recommendations, and conclusions of the referee. (4) Trial court erred in rendering judgment against the Oklahoma Union Traction Company and in favor of the defendant Colonial Trust Company, and the Central State Bank of Kiefer. (5) The court erred in ordering the receiver to satisfy the judgments in favor of the Central State Bank and Colonial Trust Company out of the funds in the hands of said receiver derived from the sale of the property of the traction company, to the exclusion of the claims of plaintiffs in error. (6) The court erred in approving findings of fact Nos. 8, 9, 13, 18, 19, and 31, and conclusions of law Nos. 1 to 16 of the referee. (7) Referee and court erred in refusing to render judgment in favor of plaintiffs in error that they participate in the distribution and receive the payment of their said respective claims out of the funds in the hands of the receiver, arising from the sale of the property of the traction company. (8) The referee and court erred in finding and adjudging that there had been no diversion of the current earnings while in the hands of the receiver. (9) Referee and the court erred in not finding and adjudging claims and liens of plaintiffs in error against the property of the traction company and the proceeds derived from the sale thereof to be prior and superior under the statutes and laws of the state of Oklahoma to the lien and claim of the mortgage bondholders, the Central State Bank of Kiefer, and the Colonial Trust Company. (10) That the findings of the referee and the approval thereof by the court and the judgment of the court based thereon are not sustained by the evidence and are contrary to the evidence. (11) The judgment of the trial court and conclusions of law of the referee are contrary to law.

The plaintiffs in error discuss the foregoing assignments of error under three propositions:

First. Because the claims of the plaintiffs in error are entitled to priority of payment to the mortgage lienors, from the funds in the hands of the receiver from the sale of the mortgaged property under the provisions of sections 3868 to 3871 of the Rev. Laws of Oklahoma 1910.

Second. Because the claims of the plaintiffs in error are entitled to priority of payment to the mortgage lienors, from the funds in the hands of the receiver as equitable liens arising by reason of plaintiffs in error having furnished labor, materials, and supplies necessary to the maintenance, operation and improvement of the railroad, a reasonable length of time, to wit: within six months prior to the receivership.

Third. Because the claims of the plaintiffs in error are entitled to priority of payment to the mortgage lienors from the funds in the hands of the receiver from the sale of the mortgaged property, since said claims having accrued within six months prior to the appointment of a receiver, and since the income of said property during the receivership was expended for betterments and improvements of the property covered by the mortgage under which mortgage lienors hold.

The sections of the statutes referred to are as follows:

"Sec. 3868. Every mechanic, builder, artisan, workman, laborer or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing toward the equipment, or to facilitate the operation of any railroad, shall have a lien therefor upon the road-bed, building, equipment, income, franchise, and other appurtenances of said railroad, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, beneficiaries under trust or owners.

"Sec. 3869. The lien mentioned in the preceding section shall not be effectual unless suit shall be brought upon the claim within one year after it accrued.

"Sec. 3870. The said lien shall be mentioned in the judgment rendered for the claimant in an ordinary suit for the claim, and may be enforced by ordinary levy and sale under final or other process of law or equity.

"Sec. 3871. A notice of ten days shall be given to the railroad of the existence of a claim or the intended lien which is contemplated under this article."

It is conceded by the plaintiffs in error that no suit was filed by them to enforce their claims and liens against said Oklahoma Union Traction Company, other than their participation in this receivership action. It is also admitted that the several petitions of intervention of the plaintiffs in error were not filed within one year after the several

claims accrued. It is contended, however, that inasmuch as the court, by its officer, had taken charge of all of the properties and franchises of said street railroad within the one-year period (in fact, within six months of the creation of the indebtedness for which the claims of plaintiffs in error are asserted) the suit and notice mentioned by sections 3869 to 3871, supra, were unnecessary. In other words, that section 3869 of the act, being in the nature of a statute of limitation, is stayed during the period of receivership, and that, since the court had taken possession of all the property and franchise of said railroad, the plaintiffs in error could not bring the suit mentioned in section 3869, supra. So that all that was necessary, in order that plaintiffs 'in error have the benefit of section 3868 of the statute, was for them to intervene herein before the final determination of this cause. That if they could not bring a separate independent action, then why serve the notice? That the law does not require the doing of a vain act. That section 3868 gives the lien, fixes the right, and the following sections of the act simply go to the remedy. Under the contentions of the plaintiffs in error one thing is clear—had not the receiver been appointed, the plaintiffs in this case would not have been entitled to a lien under the sections of the statutes quoted supra, because no suit was commenced by any of them within one year from the accrual of their claims, and such default would have been a complete bar to the assertion of such a lien. But it is asserted that the appointment of a receiver in this suit within a year operated to suspend the running of the statute. So the question thus presented is: Did the appointment of a receiver toll the statute? On this question, we find that in High on Receivers (4th Ed.) sec. 184, it is said:

"The appointment of a receiver over the estate or property does not alter or affect the rights of the parties as regards the operation of the statute of limitations."

In 25 Cyc. 1282, it is said:

"As a general rule, the mere appointment of a receiver does not in any way affect the running of the statute of limitations. But where the receiver is appointed to take charge of an estate for the purpose of administering it, as for instance the settlement of affairs of a partnership and the payment of firm debts, the statute being substantially for the benefit of all the creditors, in analogy to an ordinary creditor's bill, the running of the statute of limitations is suspended in equity against the claims by firm creditors for the payment of partnership debts out of the assets in the receiver's hands."

In support thereof the following cases were cited: Cain v. Seaboard Air Line, 138 Ga. 96, 74 S. E. 764; Taylor v. Vossburg Mineral Springs, 128 La. 364, 54 South. 907; Williams v. Taylor, 99 Md. 306, 57 Atl. 641.

The authorities quoted announce the general rule as above stated. In this case, the action was commenced in the district court of Tulsa county, by the First National Bank of Tulsa, for the foreclosure of its mortgage upon the property of the Oklahoma Union Traction Company, and in its petition it alleged the insolvency of the defendant and asked for the appointment of a receiver. A receiver was appointed, who took charge of the street railway, and operated the same for about three years, after which time he sold the same by order of the court, and in the meantime defendants in error Central State Bank of Kiefer and Colonial Trust Company intervened and filed actions respectively for foreclosure of mortgages upon the property of the defendant, then in the hands of the receiver. More than two years thereafter, the plaintiffs respectively presented their claims, claiming prior lien upon the property of the defendant by reason of the provisions of the statute quoted, supra; and (2) since such claims having accrued within six months prior to the appointment of a receiver, that the same were a lien in equity upon the income of said property during the receivership, which lien was prior to that of the mortgage lienors.

A referee was appointed by the court on December 14, 1914, the property having been previously sold by the receiver and such sale confirmed by the court. The referee made findings, which were approved by the court, denying the claims of plaintiffs in error for liens upon both grounds, holding as to the first ground contended for by plaintiffs in error that by reason of their failure to bring suits to establish their statutory liens within one year from the accrual thereof as provided by the statute, or to present their claims in the court in this cause within said period, and their failure to give notice as required by the provisions of the statutes, they were barred; and as to plaintiffs in error's second contention, that the lien in equity for materials and labor furnished to railroad within six months prior to the appointment of a receiver could exist only as to surplus income in the hands of the receiver after the payment by him of claims for operating and expenses incurred for such operation and taxes upon the property in his hands; and the referee made further findings, which were approved by the court, that no such surplus existed, and therefore plaintiffs in error were not entitled to a prior lien upon the mortgaged property or moneys, in the hands of the receiver derived from the sale of such prop-

erty under an order of the court, and such finding on the latter contention is fully sustained by the decision of the Supreme Court of the United States in the case of Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717; also by the Circuit Court in Kan. Loan & Trust Co. v. Electric Light Co., 108 Fed. 702, and Chicago & A. R. v. United States & Mex. T. R. Co., 225 Fed. 940, 141 C. C. A. 64.

Plaintiffs in error's contention that this action being brought by the First National Bank of Tulsa to foreclose its mortgage and the appointment of a receiver, as was done in this case, precluded them from bringing suit mentioned in section 3869, supra, cannot be maintained. The action was instituted by the holder of a mortgage lien to foreclose the same, and upon its motion a receiver was appointed and directed to take charge of all the property, goods, money, and effects of the said defendant, and preserve the same until further order of the court. The action was in no character one that would of necessity result in the distribution of the property of the defendant among its creditors. The appointment of a receiver did not in any manner prevent the claimants from making their inchoate lien effectual by instituting their actions at law, or otherwise, against the Oklahoma Union Traction Company, and should such an action have been filed by the claimants the judgment could not have been obtained to the same extent as if a receiver had never been appointed.

The action provided for in the statute is simply an action on the claims and does not render it necessary to sequester the property. Hence there was nothing to prevent the preservation of plaintiffs in error's liens in the manner provided by the laws of their creation, and there was not the slightest impediment to the claimants instituting their actions against the Oklahoma Union Traction Company within the year, nor was there anything to prevent the plaintiffs in error from intervening in this case within the year. Tarbell v. Parker, 106 Mass. 347; Doe v. Erwin, 134 Mass. 90; Parsons v. Clark, 59 Mich. 414, 26 N. W. 656.

The plaintiffs in error insisted, and so argued, in their briefs, that this action as originally brought was in the nature of a creditors' bill. Mr. Black in his Law Dictionary, on page 300, defines a creditors' bill as follows:

"A creditors' bill, strictly, is a bill by which a creditor seeks to satisfy his debt out of some equitable estate of the defendant which is not liable to levy or sale under an execution at law."

The Supreme Court of the territory of Oklahoma, in the case of Miller v. Melone, 11 Okla. 241, 67 Pac. 479, 56 L. R. A. 620, approved the foregoing definition of Judge Black.

The record in this case discloses, as hereinbefore stated, that the plaintiff the First National Bank of Tulsa filed its action to foreclose a mortgage upon the property of the defendant the Oklahoma Union Traction Company, and upon its application a temporary receiver was appointed who took charge of the street railway and operated the same for a period of about three years, before the plaintiffs in error intervened in the action and asked that they be adjudged to have a priority lien upon the property or the proceeds thereof, the property having been sold by reason of order of the court, and the proceeds of the sale being in the hands of the receiver, claiming priority by reason of the statute quoted, which statute by its terms required that the suit to establish the lien mentioned should be brought by claimants within one year from the accrual of their cause of action or claim, and that a prior notice of their intention to assert such a lien should be served upon the defendant for a period of ten days before the bringing of their action, neither of which was done. It was not until December 14, 1914, if at all, that this suit was treated by the court as a suit in the nature of a creditors' bill, for it was on that date that a referee was appointed and directed to notify the creditors and the defendants to file claims, and it was thereafter that such referee had hearings in support of claims of creditors and made findings as to priority of liens and his conclusions of law in respect to the same. Hence, this suit not having been originally an action in the nature of a creditors' bill, and not becoming such until the court undertook to administer the affairs of the defendant in the interest of all its creditors, under the rule announced by the Supreme Court of the territory of Oklahoma, in the case of Miller v. Melone, supra, there was no suspension or tolling of the statutes of limitations of one year as claimed by the plaintiffs in error, and by reason thereof their rights to liens under the statute had long since been barred, and the holdings of the referee to that effect should be sustained. Miller v. Melone, supra; Tube Works Co. v. Ballou, 146 U. S. 523, 13 Sup. Ct. 165, 36 L. Ed. 1072; Ross v. Duval, 13 Pet. 45, 10 L. Ed. 51; McAleer v. Clay Co. (C. C.) 42 Fed. 667; Glenn v. Dorscheimer (C. C.) 23 Fed. 695; Bank v. Braithwaite, 7 N. D. 358, 75 N. W. 244, 66 Am. St. Rep. 653.

The rule of construction of lien statutes which create a right and provide a remedy is: That in all such cases the requirements of the statutes and conditions prescribed in

the statutes are the measure of the right, and the court cannot declare purposeless and useless that which the Legislature has made a condition of the lien. This is the rule announced by the Supreme Court of Tennessee in the case of Norman & Co. v. Edington, Groner & Griffiths, 115 Tenn. 309, 89 S. W. 744; Supreme Court of California, in Duncan v. Hawn, 104 Cal. 10, 37 Pac. 626; Supreme Court of Colorado, in Greeley, S. L. & P. R. Co. v. Harris, 12 Colo. 226, 20 Pac. 764; Cleveland, C. & S. R. Co. v. Knickerbacker Trust Co. (C. C.) 86 Fed. 73; Tod et al. v. Union R. Co., 52 Fed. 241, 3 C. C. A. 60, 18 L. R. A. 305.

In Elliott on Railroads, secs. 1071 and 1074, it is said:

"Where a lien is wholly statutory, the statutory mode must be pursued in order to obtain it." Johnson v. Garner (D. C.) 233 Fed. 756; Moore et al. v. Southern States Land & Timber Co. (C. C.) 83 Fed. 399; Hazard v. Board of Education (N. J. Ch.) 75 Atl. 237.

The record discloses that the referee found that there had been no diversion by the receiver of the income derived from the operation of the property of the defendant. and that there was no surplus net income from such source, and, in fact, that a deficit had been created on account of such operation and on account of taxes, and that such deficit has been paid from the proceeds of the sale of the property covered by the mortgages. Such findings of the referee were reasonably supported by the evidence and were in all things approved by the court.

We find, and so hold, that this appeal presents no reversible error, and the judgment of the trial court is affirmed.

All the Justices concur.