### WILLIAMS v. MAYS LBR. CO.

No. 20003. Opinion Filed June 2, 1931.

Phillips & Huggins, for plaintiff in error.

J. F. McKeel, for defendant in error.

RILEY, J. This is an action brought by the C. M. Mays Lumber Company to foreclose a materialman's lien on a certain building owned by Mrs. B. A. Williams. The amount of the alleged lien was $127.90, and was claimed for lumber, hardware, etc., alleged to have been furnished by the lumber company to Mrs. B. A. Williams. The claim is that the material was bought by defendant, by and through her son, H. E. Pinkham, acting as her agent. Defendant denies that Pinkham was her agent and alleges that she contracted with a carpenter to furnish the material and build the building, and alleges that she has paid the full amount of her contract, and that plaintiff's lien statement, not having been filed within 60 days after the last material was furnished, cannot be enforced against her.

The cause was tried to the court without a jury, resulting in judgment for plaintiff and decree of foreclosure, and defendant appeals.

The fact that the material was furnished by plaintiff and went into the building is not in dispute, nor is the ownership of the building by defendant. It was built on land leased by defendant. The lien statement was filed and suit was commenced within four months after the last item of material was furnished. Substantially the only question in dispute is whether or not H. E. Pinkham, who it is admitted contracted for the material with plaintiff, was the agent of defendant in the purchase thereof.

The principal assignment relied upon is alleged error in overruling the demurrer of defendant to plaintiff's evidence. This is based principally upon the alleged insufficiency of the evidence to establish the agency of Pinkham. Defendant claims that only acts and declarations of Pinkham at the time he ordered the material are shown to establish the claim that he was acting as agent for his mother, the defendant herein. Defendant cites a number of cases which hold that agency is never presumed, but must be proved by the party alleging it. This is conceded by plaintiff to be the law. Defendant also cites a number of cases holding that the acts, statements, and declarations of a purported agent alone are not admissible to prove agency.

Agency, like any other question of fact, is to be determined from all the facts and circumstances in evidence, but acts and declarations of the purported agent are not admissible, when standing alone, to prove agency. But when other facts and circumstances tending to show such agency are in evidence, such acts and declarations become admissible in corroboration and as a part of the res gestae when made at the time of the transaction involved.

The evidence shows that defendant leased the lot upon which the building was afterwards erected, from one C. M. Means. Means was a witness and testified that defendant came to see him before the lease contract was entered into, and told him she wanted to lease the lot. Some negotiations were had and she told him her son would come back and close the deal for her. That thereafter when the lease contract was entered into, which was in writing, Pinkham told him he was leasing the lots for defendant; when he went to sign the lease he was about to sign in his own name; that Means told him that if he was acting for his mother he should sign her name by him, and that he did so; that the lease contract was executed in this manner in duplicate and one copy was retained by Pinkham and the other placed in a bank in escrow to be held subject to the payment of the sum of $100; that when the $100 was paid, the bank sent the copy of the lease held by it to defendant. That defendant afterwards paid the rental on the lots by checks signed by her; that the lease covered two lots, and that afterwards defendant wrote him and asked him to rent the other lot to someone for her. It

appears that this was the only lease contract by which defendant held the lot upon which the building was erected, and that defendant admitted in open court at the trial that she was the lessee of the lot upon which the building was erected.

The evidence further shows that on three occasions after the material was furnished by plaintiff, defendant acknowledged the indebtedness as her own and agreed to pay it.

There was ample evidence aside from the acts and declarations of Pinkham at the time he arranged with defendant for the material tending to prove defendant's son, H. E. Pinkham, was acting as her agent in the procurement of the lease and the erection of the building. The fact of agency must be determined from all the evidence, facts and circumstances. Reed v. Anderson, 127 Okla. 64, 259 Pac. 855.

The evidence of plaintiff also showed that H. E. Pinkham, at the time he bought the materials, stated and represented that he was buying the same for his mother, the defendant; that he was acting as her agent and stated that the bills should be charged to her. Plaintiff's witness testified that partial payments were made on the bills by checks which were signed "Mrs. B. A. Williams by this man Pinkham."

This evidence was objected to at the time it was offered, but the court specifically ruled that unless the evidence was connected up by other evidence tending to show agency it would be stricken and would not be considered.

In Citizens Bank v. Mabry. 90 Okla. 63, 215 Pac. 1067, it was said:

"While it is the general rule that the declarations of an agent made to a third person in the absence of the alleged principal are inadmissible in evidence for the purpose of establishing agency, notwithstanding the rule it has many well-established exceptions, and one of the well-recognized exceptions to the rule is that when the agency is otherwise established by competent testimony, such declarations become admissible in corroboration and as part of the res gestae where made at the time of the transaction in question."

Under the foregoing rule this evidence became competent when other evidence was introduced sufficient to show agency. There was no error in overruling defendant's demurrer to plaintiff's evidence.

Other assignments of error are presented going to the alleged error in admitting in evidence the acts and declarations of Pinkham at the time he purchased the material from plaintiff, but what we have said renders it unnecessary to consider these assignments separately.

Defendant next contends that the court committed error in admitting the testimony of C. M. Means going to the leasing of the lot, by and through her son, upon which the building was erected by defendant. It is contended that this was a collateral transaction not in any way connected with the question in issue. The leasing of a lot and the erection of a building thereon by defendant are so closely connected as to constitute substantially a single transaction. If defendant's son acted as her agent in leasing the lot, it is fair to assume that he may have continued to act as her agent in the erection of the building. Particularly is this true when it is admitted that Pinkham in fact did erect the building, although coupled with this admission is the contention that in so doing he was acting as an independent contractor. We think the evidence was admissible.

After the order overruling the defendant's motion for a new trial and after supersedeas bond was filed and approved, defendant served notice upon plaintiff that she would deposit the amount of plaintiff's claim and give the bond provided for in section 7465, C. O. S. 1921, for the discharge of the lien, and thereafter deposited with the court clerk the sum of $127.90, and filed a bond conditioned as required by said section 7465, which bond was approved by the court clerk. One day thereafter the attorney for plaintiff filed a motion wherein he set out in substance that the said money had been paid in by defendant "in satisfaction of the judgment and lien * * * not including interest, costs or attorney's fees," and prayed for an order directing the court clerk to pay said money to plaintiff in satisfaction of the principal amount due. The trial court sustained this motion and directed the clerk to pay said money to plaintiff, and in the order said:

"* * * in settlement and satisfaction of the judgment herein rendered for the principal indebtedness, not including interest, costs or attorney's fee, and that said judgment for said interest, costs and attorney's fee stand as originally rendered and that the lien of the plaintiff on the property described in said judgment to be continued in force and effect to secure the payment of said interest, costs and attorney's fee and the clerk of this court is directed not to enter any satisfaction or release of said lien."

Defendant appears to have had no notice whatever of the filing of the motion by plaintiff, nor of the hearing thereon, and on No-

vember 27th filed her motion to set aside the order. This motion was overruled and the proceedings were incorporated in the case-made.

Defendant complains bitterly of the proceedings of the court in directing the payment of the money to plaintiff and directing the clerk to refuse to enter a discharge of the lien.

The action of plaintiff's counsel in filing and presenting this motion and procuring the order of the court without notice to defendant or her counsel can hardly be excused.

The court undoubtedly erred in directing the clerk to pay the money over to plaintiff or his attorney and in directing the court clerk to refuse to enter a discharge of the lien. As we view the section referred to, defendant had the right at any time before the judgment of plaintiff became final to have her property discharged from the lien by complying with section 7465, supra. That section does not limit the time within which the property may be so discharged. The clear purpose of the section referred to is to enable one to discharge his property from a lien claim by giving the proper security for the payment thereof, and thus enable him to deal with his property free from such claim while the validity of the lien is being contested. This right ought and was doubtless intended to extend and continue until the final adjudication of the claim, not alone in the trial court, but upon appeal to this court. Had it been necessary to reverse the judgment herein, the prejudice to defendant's rights would have been so apparent as to need no discussion. The practice of presenting motions and making orders so vitally affecting the rights of one of the parties to an action without notice and opportunity to be heard ought not to obtain in any court of justice and should be condemned.

However, the principal judgment and order entered must be affirmed, and it would avail defendant nothing to reverse the order directing the payment of the money to plaintiff at this time, since plaintiff is now entitled to its money and defendant is relieved from paying interest on the judgment.

The order directing the clerk not to enter a discharge of the lien should be vacated. Plaintiff is entitled to look to the bond for the payment of the costs and attorney's fee.

The judgment and order of the trial court are affirmed, except that part directing the clerk to refuse to enter a discharge of the lien, which is reversed, and the cause is remanded, with directions to set aside said order so far as it directs the clerk to refuse to enter a discharge of the lien.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., not participating.