Ronald L. **UPTEGRAFT, Jr.,** Plaintiff,

v.

The **HOME INSURANCE COMPANY,** a **foreign insurance corporation and Oklahoma Farm Bureau Mutual Insurance Company,** a **domestic insurance company,** Defendants.

No. 59699.

Supreme Court of Oklahoma.

April 19, 1983.

As Corrected April 20, 1983.

Clifton D. Naifeh, Miller & Naifeh, Norman, Randall A. Breshears, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for plaintiff.

Edwin F. Garrison, Looney, Nichols, Johnson & Hayes, Oklahoma City, for defendant, Home Ins. Co.

Earl D. Mills, Reggie N. Whitten, Robert B. Mills, Foliart, Mills & Niemeyer, Oklahoma City, for defendant, Oklahoma Farm Bureau Mut. Ins. Co.

OPALA, Justice:

Certified to us under the Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1601 et seq., is the following first-impression question:

"Does an injured person, by failing to commence an action against an uninsured motorist tortfeasor within the time established by 12 Okla.Stat.1981 § 95 Third, thereby discharge the injured person's insurer from liability upon its uninsured motorist insurance policy?"

We answer in the negative and hold that actions to recover a loss under the uninsured motorist coverage are governed by the five-year statute of limitations applicable to written contracts and that a provision in the insurance policy which limits the time for bringing a suit thereunder to less than the statutory period is void.

The plaintiff-insured, while driving his employer's vehicle, incurred injuries in a collision with an uninsured motorist. The vehicle was protected by uninsured motorist coverage of the company policy. The injured worker, who had uninsured motorist coverage for his own personal vehicle with another insurance company, did not bring a suit against the tortfeasor within the two-year limitations period. Over three years after the loss he commenced in federal court an action against the two insurance companies which carried the uninsured motorist coverage.

The argument for the insured is that the five-year statute of limitations governs his claim. His contention is premised upon the view that an insurer's liability for the tort of another under the uninsured motorist endorsement is a contract and hence an action upon it is one *ex contractu* which is governed by a five-year statute of limitations. 12 O.S.1981 § 95(1).

The insurers, on the other hand, contend that the two-year statute of limitations applicable to torts should apply. They argue that the insured, in order to recover, must establish all of the elements of a tort action. 12 O.S.1981 § 95(3). Their argument submits that an insured who fails to comply with the statute is not "legally entitled to recover". The insurers claim that once the statute has run, as in this case, their subrogation rights under the endorsement are defeated.

I.

The purpose of an uninsured motorist provision in an insurance contract is

to protect the insured from the effects of personal injury resulting from an accident with another motorist who carries no insurance or is underinsured.[1] The uninsured motorist statute, 36 O.S.Supp. 1976 § 3636,[2] does not provide a specific time bar nor does it make reference to any other limitations period which is to be applied. While an action in tort for personal injury must be brought within two years after the cause of action arises, 12 O.S.1981 § 95(3), by § 95(1) a five-year statute of limitations is provided for actions on written contracts.

■■■ An action is one *ex contractu* when it is derived from (a) an express promise, (b) a promise implied in fact or (c) a promise implied in law.[3] The uninsured motorist coverage constitutes a carrier's direct promise to the insured to pay indemnity for a specified loss. Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is understood, in insurance parlance, as "first-party coverage"—much like collision, comprehensive, medical payments or personal injury protection—and not as "third-party coverage", such as personal injury or property damage coverage of public liability insurance.[4] In short, we

---

1. *Globe American Cas. Co. v. Goodman,* 41 Ohio App.2d 231, 325 N.E.2d 257, 261 [Ohio App.1974]; *Sahloff v. Western Cas. & Surety Co.,* 45 Wis.2d 60, 171 N.W.2d 914, 918 [Wis. 1969].

2. The collision in this controversy occurred September 3, 1978. Rights under uninsured motorist coverage depend on the statute in effect when the policy was issued or was last renewed. *MFA Ins. Co. v. Hankins,* Okl., 610 P.2d 785, 787 [1980] and *McKinley v. Prudential Property & Cas. Ins.,* Okl.App., 619 P.2d 1269, 1270 [1980]. The plaintiff's rights against the insurers are hence governed here by the terms of 36 O.S.Supp.1976 § 3636. That section was amended in 1979. Under the 1976 version of the act (a) there is no liability by the uninsured motorist carrier unless the tortfeasor's public liability limit *is less than the* limit of the uninsured motorist coverage and (b) the claim of the § 3636 insured stands limited to the difference between the higher § 3636 limit and the adverse (other) vehicle's public liability limit. *Mid-Continent Cas. Co. v. Theus,* Okl., 592 P.2d 519 [1979].
The terms of 36 O.S.Supp.1976 § 3636 provide in pertinent part:
" * * * (B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. * * *
(C) For the purposes of this coverage the term 'uninsured motor vehicle,' shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency or whose liability insurer for any reason either cannot or is not legally required to afford at least the per person coverage limits with respect to the legal liability of its insured, applicable to any injured party under any uninsured motorist coverage covering such injured party. * * *
(E) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, the insurer making such payment shall not be entitled to any right of recovery against such tortfeasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tortfeasor. * * * " [Emphasis added].

3. *Thiry v. Armstrong World Industries,* 661 P.2d 515 [No. 57,815, March 22, 1983] (Opala, J., concurring); *T & S Investment Company v. Coury,* Okl., 593 P.2d 503, 505 [1979]; *Anderson v. Copeland,* Okl., 378 P.2d 1006, 1007 [1963]; *Piggee v. Mercy Hospital,* 199 Okl. 411, 186 P.2d 817, 818 [1947]; *First National Bank v. Matlock,* 99 Okl. 150, 226 P. 328, 331–332 [1924]; *Associated Indemnity Corp. v. Cannon,* Okl., 536 P.2d 920, 923 [1975]; 36 A.L.R. 1088.

4. Our view is in accord with that of other jurisdictions in which the courts have held that actions by insureds against their insurers under an uninsured motorist endorsement similar to one prescribed by Oklahoma law are *ex contractu* and thus are governed by the principles and procedures applicable to contract actions generally. *Transnational Ins. Co. v. Simmons,* 19 Ariz.App. 354, 507 P.2d 693 [Ariz.C.A.1973]; *Hartford Acc. & Indem. Co. v. Mason,* 210

are dealing here with an agreement to indemnify the insured for injuries caused by another—who was uninsured or underinsured—based on a showing that the other motorist was guilty of negligence resulting in injury to the insured.[5] A suit founded upon the insured's allegations (a) that he is entitled to payment under one of the first-party coverage clauses in the contract and (b) that the carrier has refused payment thereby breaching its promise, is clearly a contract action.[6] The circumstances of the uninsured motorist's culpability and of the insured's damages are matters which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's promise. The recovery of the insured is based ultimately upon the policy without which no liability could be imposed upon the insurer for the tort of another.

■ Even if the nature of the uninsured motorist coverage does not call for application of the two-year statute of limitations, insurers urge, it should nevertheless govern here because, within the meaning of 36 O.S.Supp.1976 § 3636(B), the insured is no longer "legally entitled to recover" from the tortfeasor. They urge that this phrase requires every insured to establish all elements of a viable claim in tort and that the timely filing of a suit within a two-year period of limitations is a *sine qua non* of recovery against the insurer. We do not agree.

The words "legally entitled to recover" simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. The phrase does not subject the insured's claim to the two-year statute of limitations applicable to an action *ex delicto*.[7]

## II.

■ One of the insurers asserts that the plain language of its contract with the insured clearly establishes that it had no obligation to pay under the uninsured motorist coverage of the policy if the action against the uninsured tortfeasor was barred by the statute of limitations. This provision is perceived by the insurer as a condition

So.2d 474, 475 [Fla.App.1968]; *Van Hoozer v. Farmers Ins. Exch.,* 219 Kan. 595, 549 P.2d 1354 [Kan.1976]; *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606 [Mo.App.1963]; *Selected Risks Ins. Co. v. Dierolf,* 138 N.J.Super. 287, 350 A.2d 526, 529 [N.J.Chanc.1975]; *DeLuca v. Motor Vehicle Acc. Indemnity Corp.,* 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 [N.Y.App.1966]; *Globe Amer. Cas. Co. v. Goodman,* supra note 1, 325 N.E.2d at 261; *Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584, 588 [R.I.1971]; *Schleif v. Hardware Dealer's Mutual Fire Ins. Co.,* 218 Tenn. 489, 404 S.W.2d 490, 491–492 [Tenn. 1966]; *Franco v. Allstate Ins. Co.,* 496 S.W.2d 150 [Tex.C.C.A.1973]; See also Widiss, A Guide to Uninsured Motorist Coverage, § 2.25, p. 54 [1969].

5. *Selected Risks Ins. Co. v. Dierolf,* supra note 4, 350 A.2d at 530–531; *Globe Amer. Cas. Co. v. Goodman,* supra note 1, 325 N.E.2d at 261; *Sahloff v. Western Cas. & Surety Co.,* supra note 1, 171 N.W.2d at 918.

6. While both public liability and uninsured motorist coverage provide compensation for bodily injury sustained as a result of the negligent operation of a motor vehicle, they serve different purposes. Uninsured motorist insurance *is not liability insurance.* It does not undertake to protect the insured against liability he may incur to others but rather it compensates him for a loss caused by a specific class of tortfeasors. On the other hand, public liability coverage affords the insured protection, not compensation. *Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 403 A.2d 1229, 1231 [Md.App.1979]; *Pickering v. Amer. Employers Ins. Co.,* supra note 4, 282 A.2d at 587.

7. *Selected Risks Ins. Co. v. Dierolf,* supra note 4, 350 A.2d at 529–530; *Reese v. State Farm Mut. Auto. Ins. Co.,* supra note 6, 403 A.2d at 1231; *DeLuca v. Motor Vehicle Acc. Indem. Corp.,* supra note 4; *Sahloff v. Western Cas. & Surety Co.,* supra note 1, 171 N.W.2d at 917; *State Farm Mut. Auto. Ins. Co. v. Griffin,* 51 Ala.App. 426, 286 So.2d 302, 306 [Ala.App. 1973]; *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606, 610 [Kan.1973]; *Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 218 So.2d 580, 583 [La.1969]; *Detroit Auto. Inter-Ins. Exch. v. Hafendorfer,* 38 Mich.App. 709, 197 N.W.2d 155, 159–160 [Mich.App.1972]; *Hill v. Seaboard Fire & Marine Ins. Co.,* supra note 4; *Brown v. Lumbermens Mutual Cas. Co.,* 285 N.C. 313, 204 S.E.2d 829 [N.C.1974]; *Contra: Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 134 S.E.2d 206 [S.C.1964].

which limits its insurance liability risk. The policy contained the following clause:

"The Company shall not be obligated to pay under this insurance if an action against the uninsured motorist is barred by the Statute of Limitations."

Our attention is directed to an Ohio decision in which the court held that in the absence of a controlling statute to the contrary, parties may by contract limit the time for bringing an action upon it to a period shorter than that prescribed in a general statute of limitations if that period is not unreasonable.[8]

The insured, relying on the provisions of 15 O.S.1981 § 216, argues that this provision is void and unenforceable in Oklahoma. The terms of § 216 provide:

"Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his right under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

In Part I of this opinion we determined that the limitations period applicable here is that prescribed by § 95(1). The effect of the contract clause invoked by the insurer is to limit to two years the time within which the insured can bring an action to enforce his contract rights.

The contractual provision relied on by the insurer is clearly void under § 216. It also contravenes Art. 23 § 9, Okl. Const. That section provides:

"Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void."

In *Gray v. Reliable Insurance Co.*,[9] we held that the "obvious intention of [Art. 23 § 9] . . . was to prevent the abridging of the time within which rights under the law may be enforced". The two-year contractual limitation is hence null and void both under our constitutional as well as statutory law.

### III.

■ The insurers contend that if the five-year statute of limitations is applied, their subrogation rights would be vulnerable to destruction. They submit that this case is analogous to *Porter v. MFA Mutual Insurance Co.*[10] In *Porter* we dealt with the insured's affirmative act—his settlement and release of the tortfeasor—and held that because the act operated to destroy subrogation claims, it discharged the insurer's liability under the uninsured motorist coverage.

The courts have varied in their approach to the problem of the insurer's subrogation rights.[11] Where there is an absence of some

8. *Globe American Cas. Co. v. Goodman,* supra note 1, 325 N.E.2d at 261. Contra: *Burgo v. Illinois Farmers Ins. Co.,* 8 Ill.App.3d 259, 290 N.E.2d 371, 374 [Ill.App.1972]. In *Burgo* the court said the shorter limitations period in the policy was a "dilution or diminution of the uninsured motorist statute." Since the Illinois statute, like Oklahoma's, was also silent as to a time limit in which the insured may exercise his rights, the court held that the "statute of limitations to file suits on contracts must govern."

9. 26 Okl. 592, 110 P. 728, 730 [1910]. See also *McDonald v. Amtel, Inc.,* Okl., 633 P.2d 743, 745 [1981].

10. Okl., 643 P.2d 302, 305 [1982].

11. *Amer. States Ins. Co. v. Williams,* 151 Ind. App. 99, 278 N.E.2d 295, 300 [Ind.App.1972]; *Sahloff v. Western Casualty & Surety Co.,* supra note 1, 171 N.W.2d at 918; *Kackman v.*

*Continental Ins. Co.,* 319 F.Supp. 540 [D.C. Alaska 1970]; *La Marsh v. Maryland Casualty Co.,* 35 Misc.2d 641, 231 N.Y.S.2d 121, 124 [1962]. In *Lemrick v. Grinnell Mut. Reinsurance Co.,* 263 N.W.2d 714, 717 [Iowa 1978], the court stated: "If an injustice exists regarding time limits on subrogation suits, the proper avenue would be to the legislature."

Some court decisions place importance on the uniform endorsement in the policy which provides: "After notice of claim under this endorsement, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury." *Selected Risks Ins. Co. v. Dierolf,* supra note 4, 350 A.2d at 531. In *Selected Risks,* the court said that by virtue of this cooperation agreement, the initial responsibility to act to protect subrogated rights rests upon the insurer. It held that when an insurer sits on these

affirmative acts or prejudicial conduct by the insured which may operate to destroy the insurer's subrogation rights, mere failure of the insured to commence an action against the uninsured tortfeasor within the two-year period of limitations will not afford a basis for invoking the *Porter* doctrine to effect a discharge of the insurer's liability.[12]

In summary, we hold that failure of the insured to commence an action against the uninsured tortfeasor within the two-year time limit of 12 O.S.1981 § 95(3) does not *ipso facto* discharge the insurer from liability upon its uninsured motorist coverage.

IRWIN, LAVENDER, DOOLIN and WILSON, JJ., concur.

SIMMS, V.C.J., dissents.

HARGRAVE, J., disqualified.

rights, it cannot be heard to complain when the statute of limitations has run. Also in accord are: *American States Ins. Co. v. Williams,* supra 278 N.E.2d at 300–301; *Sahloff v. Western Cas. & Surety Co.,* supra note 1, 171 N.W.2d at 918.

**12.** We leave unsettled by this opinion two cognate questions: (1) whether the same result would be reached if the record showed that the insured refused to heed the insurer's demand— made within the two-year tort limitations period—to protect its subrogation rights by filing a lawsuit against the uninsured tortfeasor; and (2) whether the denial of a claim by the insurer takes it out of the operation of the *Porter* doctrine because an insurer who has denied a claim, cannot later complain of its subrogation rights' destruction. Those questions were neither asked nor are they fairly comprised within the single question that was posed.