Dollie KRATZ and Sheila
Kratz, Appellants,

v.

James KRATZ and Prudential General
Insurance Company, Appellees.

No. 77602.

Supreme Court of Oklahoma.

June 20, 1995.

As Corrected Nov. 6, 1995.

Rehearing Denied Nov. 16, 1995.

Rick W. Bisher, Roger B. Hale, Oklahoma City, for appellants.

Barry A. Heaver, Tulsa, for appellees.

SIMMS, Justice.

Title 42 O.S.1991 § 43 provides that a hospital which furnishes medical care to a person injured in an accident shall have a lien for the amount of its charges on the proceeds of the patient's recovery from a claim asserted "against another for damages" suffered.[1] The question presented in this case is whether the lien can be enforced against uninsured motorist proceeds paid by the patient's own insurer. We find it cannot.

Dollie Kratz was seriously injured while she was a passenger in an automobile driven by her husband, James. She received care and treatment from Appellee Jane Phillips Memorial Medical Center and incurred expenses of $17,775 for that treatment. The hospital filed its lien for that amount and gave the required notice pursuant to 42 O.S. 1991, §§ 43, 44.

Plaintiff filed a claim with her own insurer, Prudential General, but the parties were unable to reach a settlement. Plaintiff then filed suit against Prudential and James Kratz seeking to recover under her liability coverage, but she was prohibited from doing so because of a household exclusion clause. Plaintiff's recovery was limited to the uninsured motorist portion of the policy and she and Prudential settled for $30,000, the policy limits of the uninsured motorist coverage.

The trial court enforced the hospital's lien against the settlement proceeds, rejecting appellant's arguments that the statute was intended to apply only to damages recovered from a tortfeasor or his insurer and did not extend to her uninsured motorist payment which was a benefit of her private contractual arrangement with her insurer obtained in an action which sounds in contract, not tort.

The Court of Appeals, over a vigorous and well-reasoned dissent, affirmed the ruling of the trial court in favor of the hospital. The court found the statutory language was clear and unambiguous and would apply to funds received by an injured party from a source other than the tortfeasor, even her own insurer. We agree with appellant and the view of the dissenting opinion that the statute is not clear regarding who is meant to be included as "another". It is uncertain and ambiguous as to whether uninsured motorist benefits received from a party's own insurer are "damages" recovered from a "claim against another".

Appellee hospital concedes that appellant's recovery was a benefit of her contract, but it contends that there is no basis in § 43 to infer that appellant's uninsured motorist pro-

1. The statute provides: "Every hospital in the State of Oklahoma, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workers' Compensation Act, shall, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, or by his heirs, personal representatives or next of kin in the case of his death, whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital for the treatment, care and maintenance of such patient in such hospital up to the date of payment of such damages: Provided, however, that this lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient, his heirs or personal representatives; provided further, that the lien herein set forth shall not be applied or considered valid against any claim for amounts due under the Workers' Compensation Act in this state."

ceeds should be treated any differently than if that same amount had been recovered under the liability portion of her policy which was appellant's initial claim. Hospital's argument that the statute is not ambiguous and that "damages" explicitly includes these contractual benefits in "any recovery or sum had or collected to be collected by [a] patient" only underscores the ambiguity on this point. Title 23 O.S.1991 § 3 sets out the right to damages and the definition of damages as follows:

> "Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

Benefit in an insurance context is defined in Black's Law Dictionary, Fifth Edition, as "[f]inancial assistance received in time of sickness, disability, unemployment, etc., either from insurance or public programs ..."

■ We have recognized that uninsured motorist coverage is a carrier's direct promise to its insured to pay the insured for a loss, rather than a promise to its insured to pay a third party; it is "first-party coverage" like collision insurance, not "third-party coverage" like public liability insurance. The recovery of the insured is based on the terms of the policy and the action is one in contract. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okl.1983).

The parties believe this is a case of first impression in Oklahoma. They have called our attention to several decisions from other jurisdictions and rely on them as supportive of their respective positions. We do not find them so, however, because the statutory language involved in those cases is significantly different from the language before us in § 43.

In *Storey v. University of New Mexico Hospital*, 105 N.M. 205, 730 P.2d 1187 (1986), the court found that a hospital lien could be enforced against the proceeds of an uninsured motorist policy but the language of that statute specifically included "[a]ny person, firm or corporation, including an insurance carrier, making any payment to a pa-

tient ..." Likewise in *Dade County v. Pavon*, 266 So.2d 94 (Fla.App.D3, 1972), the court held that a hospital would be entitled to a lien on uninsured motorist proceeds under a statute which provided a lien "upon any and all causes of action, suits, claims ..." In *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325 (Tex.1984), a statute which expressly excluded all insurance proceeds other than "public liability insurance" was held not to subject uninsured motorist proceeds to a hospital lien.

This is not a case of first impression in Oklahoma, however. There is an unpublished opinion, *Hillcrest Medical Center, Inc. & Okmulgee Memorial Hospital Authority v. Webber*, (Okl.App.1983), No. 57,169,[2] in which a hospital lien was enforced against uninsured motorist proceeds. The Court of Appeals, Division No. 1, found it would be "illogical" to allow a hospital lien to attach to liability insurance funds but not uninsured motorist funds because the insurance coverages were, in the court's opinion, intended to protect against the same risks. This Court granted certiorari to the Court of Appeals to review the opinion but certiorari was subsequently recalled as improvidently granted and this Court ordered the Court of Appeals opinion withdrawn from publication. 55 OBJ 2256. There is also a recent published decision of the Court of Appeals, *Woods v. Baptist Medical Center of Okl.*, 890 P.2d 1367 (Okl.App.1995), enforcing a hospital lien against funds recovered from uninsured motorist coverage which was based in large part on the court's belief in the soundness of the reasoning in *Hillcrest Medical Center and Okmulgee Memorial Hospital v. Webber*, supra.

■ When words and phrases of a statute are not explicit, the Court must determine their meaning in a way that produces a reasonable result and promotes the general purpose for which they were enacted. *AMF Tubescope Company v. Hatchel*, 547 P.2d 374 (Okl.1974). It is axiomatic that the cardinal rule of statutory construction is to ascertain the intent of the legislature and if possible to give effect to all its provisions.

---

**2.** A discussion of the decision appears at Annot. 16 ALR 5 303,305,389.

■ The obvious purpose of the hospital lien statute is to encourage hospitals to care for accident victims who might otherwise be non-paying patients. We recognized in *Vinzant v. Hillcrest Med. Center*, 609 P.2d 1274 (Okl.1989) that the legislatures of several states have enacted hospital lien statutes in an attempt to lessen the burden imposed on hospitals by non-paying patients by giving hospitals liens on any recovery a patient might obtain from a tortfeasor. See also, Annot. Construction, Operation and Effect of Statute Giving Hospital Lien Against Recovery from Tortfeasor Causing Patients Injury. 16 ALR 5th 262.

■ Although the purpose of the statute is to assure hospitals of compensation for their treatment of emergency patients, we are not free to "read in" the inclusion of funds which are not fairly embraced by the terms of the statute. We have recognized that there is no basis for a hospital lien in the absence of statute. *Vinzant v. Hillcrest Med. Center*, supra.

■ This Court must strictly construe statutes creating liens. Liens are property rights and it is not the function of the courts to create them from a sense of justice in a particular case. *Young v. J.A. Young Mach. & Supply Co.*, 224 P.2d 971 (Okl.1950). Liens can be created either by contract or by law. 42 O.S.1991 § 6. A statutory lien such as the hospital lien at issue stands in derogation of the common law and must be strictly construed. A lien that is not provided by the clear language of the statute cannot be created by judicial fiat, for the words of the statute are the measure of the right and the remedy. A court cannot create a lien out of a sense of fairness if the terms of the statute are found too narrow and have not been met. *Riffe Petroleum C. v. Great Nat. Corp., Inc.*, 614 P.2d 576 (Okl.1980); *Harriss v. Parks*, 77

Okl. 197, 187 P. 470 (1920); *Interurban Construction Co. v. Central State Bank of Kiefer*, 76 Okl. 281, 184 P. 905 (1909).

■ The title to an Act is a valuable aid in its construction and may be considered in determining legislative intent. The Title of the Act, Laws 1969 C. 231, provides:

"An Act relating to liens; creating lien against judgment *in personal injury actions* in favor of hospital rendering services to injured party; providing for exceptions; making lien effective only upon filing of notice; and declaring an emergency." (Emphasis added)

The title explicitly restricts the reach of the statutory lien to proceeds recovered in a *personal injury* action from a tortfeasor or his insurer. This narrowed scope of the people who comprise the class of "another" is determinative of the question before us because the constitution has made the title of an act, as restricted by the legislature, the index to the legislature's intention governing operation of the provision of the act. In view of Art. 5, § 57, Okl. Const., which requires the subject of a legislative act to be clearly expressed in its title, the legislature is bound by its selection of a restrictive title and it has the effect of limiting the text of an act. *Caywood v. Caywood*, 541 P.2d 188 (Okl. 1915); *Poafpybitty v. Skelly Oil Co.*, 394 P.2d 515 (Okl.1964).

The notice requirements of § 44 [3] which provide for notice only to a tortfeasor and his insurer reflect that legislative intention. So too, does the attorney's lien and its established superiority over the hospital lien set out in § 43. The court noted in *Vinzant v. Hillcrest Med. Center*, supra, that superiority was legislative recognition that it is the skill and effort of the lawyer in a personal injury case which results in there being a recovery for the patient and the hospital, and rests on

---

3. The relevant portions of § 44, supra, provide: "No such lien shall be effective unless a written notice containing an itemized statement of the amount claimed, the name and address of the injured person, ... and the name of the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries received, shall be filed ...; nor unless the hospital shall also send by registered or certified mail postage prepaid, a copy of such notice with a statement of the date of filing thereof to the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries sustained ... his attorneys or legal representatives ... Such hospital shall mail a copy of such notice to any insurance carrier which has insured such person, firm or corporation against such liability, if the name and address shall be known ..."

the fact that for lawyers a contingent fee is the "customary arrangement in negligence cases." At 1277.

The decision in *Hillcrest Medical Center and Okmulgee Memorial Hospital Trust v. Webber,* No. *57,169* and *Woods v. Baptist Medical Center of Okl.,* 890 P.2d 1367 (Okl. App.1995) are expressly overruled.

The opinion of the Court of Appeals in the instant matter is vacated. The decision of the trial court is reversed and remanded with instructions to enter judgment denying the lien claim of Jane Phillips Memorial Medical Center.

ALMA WILSON, C.J., KAUGER, V.C.J., and SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., dissents.

HODGES and LAVENDER, JJ., dissent and join OPALA, J.

OPALA, Justice, with whom HODGES and LAVENDER, Justices, join, dissenting.

The court holds that a 42 O.S.1991 § 43[1] lien [called a § 43 hospital lien] will not attach to the proceeds of a patient's UM[2] coverage. Prudential General Insurance Company [insurer or Prudential] brought an interpleader to test the title to UM proceeds due Dollie Kratz [patient] for injuries sustained in an automobile accident. Jane Phillips Episcopal Memorial Medical Center [hospital] filed a § 43 hospital lien against any recovery the patient might collect. In disallowing the hospital's lien against the money on deposit, the court reasons that

because the patient's UM recovery is not *"damages" from the tortfeasor (or the latter's insurer)* but rather is a *benefit of her insurance policy,* these funds cannot be impressed with a § 43 lien.

I recede from today's pronouncement. Because the UM indemnity represents recompense for the patient's bodily injuries inflicted by the uninsured motorist, it (1) stands as a *substituted res* for any "recovery" the patient would have received from the uninsured or underinsured tortfeasor and (2) is hence subject to the § 43 hospital lien.

**I**

**THE ANATOMY OF LITIGATION**

The patient, when injured, was a passenger in a car driven by her husband, James Kratz [tortfeasor or driver]. In attempting to turn left the driver was allegedly negligent when he crossed in front of oncoming traffic, causing the patient's injury. The Kratz family has an insurance policy with Prudential, which provides both liability (third-party) and UM (first-party) coverage.[3] This policy contains a household exclusion provision— one which precludes the insured from recovering against another member of the household under the policy's coverage for public liability. It is this feature that legally relegated the driver to the status of an uninsured motorist vis-à-vis Dollie Kratz [patient].

After providing accident-related medical treatment to the patient, the hospital filed (in the county clerk's office) a lien for $17,-901.38[4] against any recovery the patient

1. The pertinent terms of 42 O.S.1991 § 43 are:

 "Every hospital ... which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workers' Compensation Act, shall, *if such injured party shall assert or maintain a claim against another for damages on account of such injuries,* have a lien upon that part going or belonging to such patient of any recovery or sum had or collected ... by such patient ... whether by judgment or by settlement or compromise...." [Emphasis mine.]

2. *UM* or uninsured motorist coverage is a first-party indemnity paid by the insurer for bodily injury sustained by the insured, for which the

latter is legally entitled to recover from the uninsured, underinsured or hit-and-run motorist (*i.e.,* the tortfeasor). *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 685 (1983). *See also* the provisions of 36 O.S.1991 § 3636(A) and (B), which require that UM coverage be offered on demand as part of the cluster of rights intended to protect the motoring public from consequences of bodily injury inflicted by resourceless drivers.

3. For a discussion of the distinction between first-party and third-party coverage, see *Uptegraft, supra* note 2 at 684–85.

4. The record discloses that after a Prudential audit of its statement, the hospital reduced its claim to $17,775.00.

might collect from another for her injuries and gave the statutorily-required notices.[5]

The patient and her daughter filed suit against the driver and their insurer. The insurer tendered $30,000.00 into the trust account of the patient's counsel, the maximum amount available *under the uninsured motorist coverage.* The April 26, 1991 *nisi prius order allowed the hospital's lien.* On appeal the trial court's decree was affirmed. This court granted certiorari and now reverses the first-instance decision for the hospital.

## II

## THE CONSTRUCTION OF STATUTORY LIENS

Statutory liens, like the § 43 hospital lien, are in derogation of the common law.[6] Since these remedial devices owe their existence to legislative enactments, the terms prescribed by the statutory texts are the measure both of the right and the remedy.[7] Liens must be *strictly* confined within the ambit of legislation giving them birth.[8] After it is clearly established that the lien right does attach, the statute's enforcement provisions are to be accorded liberal construction.[9]

## III

## THE PLAIN AND ORDINARY MEANING OF THE LANGUAGE IN 42 O.S.1991 § 43 MANDATES THAT THE HOSPITAL'S LIEN BE HELD TO ATTACH TO THE INJURED PARTIES' *UM PROCEEDS*

The ascertainment of *legislative intent* is the cardinal rule of statutory construction.[10] A statute's language, when given its *plain and ordinary meaning,* is the yardstick for divining the drafters' intent.[11] A straightforward reading of the language used in § 43 makes it abundantly clear that the legislative object is to encourage hospitals to deliver health services to persons who have been injured by another but are without sufficient funds or insurance to pay for the needed care.[12]

Legislative intent is plain when the language of the *entire* key § 43 phrase—"a claim against *another* for *damages on account of such injuries*"—is considered. *"Another"*, as this word is used in the section, deserves a much broader sweep than the court would allow. It should be read to include the UM carrier. *But for* the injuries occasioned by the uninsured motorist, there would be *neither* (1) UM carrier liability *nor* (2) UM recovery by the hospital's patient. The patient is entitled to the proceeds because of the UM insurer's *coextensive contractual and statutory liability* with that of the offending tortfeasor whose obligation is the covered "legal entitlement".[13] When giv-

---

**5.** The hospital *must not only* file a lien statement in the county clerk's office *but also* must mail a copy of the notice to its patient and the affected insurance companies. 42 O.S.1991 § 44.

**6.** *Republic Bank & Trust v. Bohmar Minerals,* Okl., 661 P.2d 521, 523 (1983); *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* Okl., 614 P.2d 576, 578–79 (1980).

**7.** *In re Tefertiller,* Okl., 772 P.2d 396, 398 (1989), citing *Riffe, supra* note 6.

**8.** *Riffe, supra* note 6 at 579; *Taylor v. B.B. & G. Oil Co.,* 207 Okl. 288, 249 P.2d 430, 433 (1952); *Martin Coal & Coke Co. v. Brewer,* 185 Okl. 169, 90 P.2d 653, 655 (1939).

**9.** *Tefertiller, supra* note 7 at 398; *Davidson Oil Country Supply v. Pioneer Oil,* Okl., 689 P.2d

1279, 1280–81 (1984); *Bohmar, supra* note 6 at 523; *Riffe, supra* note 6 at 579.

**10.** *Riffe, supra* note 6 at 579; *Stemmons, Inc. v. Universal C.I.T. Credit Corp.,* Okl., 301 P.2d 212, 216 (1956).

**11.** *Tinker Inv. & Mortg. v. Midwest City,* Okl., 873 P.2d 1029, 1038 (1994); *City of Bethany v. Hill,* Okl., 509 P.2d 1364, 1365 (1973); *Applications of Oklahoma Turnpike Authority,* Okl., 277 P.2d 176, 182 (1954).

**12.** For this court's treatment of a comparable legislative intent, see *Balfour v. Nelson,* Okl., 890 P.2d 916, 918–19 (1994), where the court discussed the provisions of 42 O.S.1991 § 46–impressing *physician liens* on recoveries for injuries *caused by another.*

**13.** *Uptegraft, supra* note 2 at 685.

en its *plain and ordinary meaning,* the UM indemnity clearly falls within the class of funds the legislature intended for impression with the hospital's lien.[14]

## IV

## PROCEEDS FROM UM COVERAGE CONSTITUTE A SUBSTITUTED *RES* FOR PERSONAL INJURY RECOVERY FROM AN UNINSURED, UNDERINSURED, OR HIT–AND–RUN MOTORIST; A § 43 HOSPITAL LIEN WILL ATTACH TO THAT SUBSTITUTED FUND WITH THE SAME EFFECT AS IT WOULD TO A RECOVERY DIRECTLY FROM THE OFFENDING TORTFEASOR

Lien-related interests tender issues for the court's equitable cognizance.[15] Chancery jurisprudence traditionally elevates substance over form.[16] UM proceeds, which represent *in essence* "personal injury recovery" collected by a vehicular tort victim under a different verbal wrap, must be treated as a legal analogue of the critical qualifying phrase quoted from § 43.

Indemnity under UM coverage is the monetary equivalent of the recompense the injured party would have received from a *fully insured* tortfeasor.[17] The uninsured motorist's tort liability *to the insured* is a *sine qua non* of the UM carrier's contractual responsibility.[18] In contemplation of law, the proceeds of UM coverage stand as a statutorily created fund—*a res*[19]—which is legally due from an uninsured or underinsured motorist for personal injury recovery. The § 43 hospital lien must hence be allowed to attach to that substituted fund with the same effect as it would to a personal injury recovery secured *directly* in a suit against the offending tortfeasor.

## V

## SUMMARY

The only issue before the court today is whether—within the meaning and purview of 42 O.S.1991 § 43 (the hospital lien law)—proceeds of UM coverage constitute the monetary equivalent of a *personal injury recovery*. An integral element of an UM coverage claim is the injured party's proof that an uninsured (underinsured or hit-and-run) motorist would be legally liable for the tort damages pressed against the insurer. In contemplation of law, the UM coverage proceeds stand as a substituted fund for a per-

---

14. *See Woods v. Baptist Medical Center of Okl.,* 890 P.2d 1367, 1369 (Okl.App.1995), where the court applied comparable reasoning to that suggested here, holding that a § 43 lien does attach to UM proceeds.

15. *First Nat. Bank of Pauls Valley v. Crudup,* Okl., 656 P.2d 914, 917 (1982); *McGill v. Cooper Supply Co.,* 196 Okl. 362, 165 P.2d 829, 831 (1946).

16. *Sinclair Oil & Gas Co. v. Bishop,* Okl., 441 P.2d 436, 439 (1967); *Kasner v. Reynolds,* 268 P.2d 864, 867 (1954).

17. *Uptegraft, supra* note 2 at 685.

18. *Markham v. State Farm Mutual Automobile Ins. Co.,* 464 F.2d 703, 705 (10th Cir.1972); *Karlson v. City of Oklahoma City,* Okl., 711 P.2d 72, 75 (1985) (Opala, J., dissenting).

19. The concept of a *substituted res* is alien *neither* to Oklahoma's statutory lien regime *nor* to its case law exposition. *See* 42 O.S.1991 § 147.1, which provides in pertinent part:

"Any property owner ... against whom a lien claim is filed ... may at any time discharge

the lien by depositing ... [a]n amount equal to ... 125% of the lien claim amount....

\*    \*    \*    \*    \*    \*

The cash deposit or bond, as the case may be, shall stand in lieu of the released lien, and the lien claimant must proceed against the substituted security...."

Jurisprudence applying this statute [and its predecessors 42 O.S.1981 § 147 and Kan.Gen.St. ¶ 4745 (1889)] treats the cash deposit or bond which discharges the lien as a substituted *res* for the real property to which the lien had previously attached. *See Williams v. C.M. Mays Lumber Co.,* 149 Okl. 201, 299 P. 885, 887 (1931); *Carr v. Wewoka Oil & Gas Co.,* 103 Okl. 139, 229 P. 434, 435 (1924); *Risse v. Hopkins Planing–Mill Co.,* 55 Kan. 518, 40 P. 904, 905 (Kan.1895).

The legal relationship between the § 147.1 cash amount or bond and the real property for which it stands (as a substituted *res* for the mechanic and materialmen's lien's satisfaction) is analogous to the relationship between indemnity proceeds—*i.e.,* the 36 O.S.1991 § 3636 UM coverage—and the recovery which the injured party would receive from a culpable motorist/tortfeasor who is an uninsured, underinsured or a hit-and-run driver/actor.

sonal injury recovery that would be difficult, if not well-nigh impossible, to collect from an uninsured tortfeasor. The money one is to receive in indemnity under one's UM coverage is hence an analogue of "personal injury recovery" lienable under the terms of § 43.

The court's pronouncement erects a *needless,* though *insuperable,* barrier to hospital admission of persons who have no means to secure their liability for care other than through UM coverage. Today's result manifests *judicial indifference to the broad legislative objective* readily discernible from the plain text of the lien statute: *to open hospital doors to those vehicular tort victims who have no health insurance and no security for payment other than the proceeds that may be due under an automobile policy's UM protection.*

I would *affirm* the nisi prius decree for the hospital and *declare* the Court of Appeals' disposition to be legally correct.