Dear Director Saffle,
¶ 0 This office has received your request for an official Opinion addressing, in effect, the following question:
Who has financial responsibility for medical expenses ofinmates incarcerated in the custody of the Oklahoma Department ofCorrections who are properly referred to private medicalproviders because the inmates were not admitted to the UniversityHospitals?
 I.
¶ 1 The State of Oklahoma has a constitutional "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The United States Supreme Court has held that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment, giving rise to a civil rights cause of action under 42 U.S.C. § 1983. Id. at 104-05; see also Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980). In Estelle, the Supreme Court explained its standard as including the indifference manifested by a state "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle,429 U.S. at 104-05.
¶ 2 According to the United States Court of Appeals for the Tenth Circuit, deliberate indifference is shown when an inmate is prevented from receiving recommended treatment or denied access to personnel capable of evaluating the need for treatment.Garcia v. Salt Lake County, 768 F.2d 303, 307-08, n. 3 (10th Cir. 1985). However, a difference of medical opinion between the prisoner and medical personnel of a prison does not give rise to a constitutional violation. Smart v. Villar, 547 F.2d 112, 114
(10th Cir. 1976)
¶ 3 Oklahoma has chosen to meet this constitutional obligation to provide medical care to inmates on several levels. Some medical personnel and facilities are on site at the correctional institutions. Constitutionally required services which the prison system is unable to provide may be provided by local hospitals. Griffin Memorial Hospital is to provide services within its capabilities to inmates who are properly referred. Those beyond Griffin's capabilities may be referred to University Hospitals. 43A O.S. Supp. 1998, § 3-701[43A-3-701].
 II. A.
¶ 4 Your question arises out of the statutory requirements involving referrals to Griffin Memorial Hospital and University Hospitals and the costs flowing from such referrals. We begin our analysis with Oklahoma Statutes, Title 43A, Section 3-701. To meet the State's constitutional obligation to provide inmate medical treatment, the Legislature has allocated part of the responsibility as follows:
 It shall be the responsibility of the Department of Mental Health and Substance Abuse Services, within facilities and professional capabilities, to provide at Griffin Memorial Hospital, Norman, Oklahoma, such medical and surgical inpatient and outpatient care as may be required by inmates from the several correctional institutions that are properly referred to the hospital by the Department of Corrections. The Department of Mental Health and Substance Abuse Services may refer to the University Hospitals, and the latter shall accept those correctional inmate patients who are beyond the facilities and professional capability of Griffin Memorial Hospital. The Department of Corrections shall be responsible for transporting to, from, and between hospitals and for providing such physical security of correctional inmate patients as may be required beyond that security normal to hospital operation. The Department of Corrections shall immediately remove from the hospital those inmate patients as they are discharged by the hospital. The hospital services provided by Griffin Memorial Hospital and the University Hospitals shall be without cost to the Department of Corrections.
43A O.S. Supp. 1998, § 3-701[43A-3-701].
¶ 5 This statute was originally passed in 1975 as part of the appropriations bill for University Hospital, 1975 Okla. Sess. Laws ch. 295, § 6; the appropriations bill for Mental Health, 1975 Okla. Sess. Laws ch. 314, § 6; and the appropriations bill for the Department of Corrections, 1975 Okla. Sess. Laws ch. 325, § 3.
 B.
¶ 6 When Section 3-701 was enacted, University Hospital was an entity operated by the Board of Trustees of the University Hospital. Prior to 1973, University Hospital was part of the University of Oklahoma. In 1973, University Hospital was recognized as a separate institution by the Legislature. 1973 Okla. Sess. Laws ch. 103. In July of 1980, the name was changed to Oklahoma Memorial Hospital and the hospital was transferred to the Department of Human Services to be operated by the Commission for Human Services. 1980 Okla. Sess. Laws ch. 20.
¶ 7 In July 1993, the Legislature transferred jurisdiction, supervision, management and control to the newly created University Hospitals Authority ("the Authority"), 63 O.S. Supp.1998, §§ 3201-3228[63-3201-3228], which transfer included all "powers, duties, responsibilities . . . obligations . . . and liabilities" of the Department of Human Services and the Commission for Human Services to the Authority. 63 O.S. Supp. 1998, § 3204[63-3204](C)(1). University Hospitals now include Children's Hospital of Oklahoma, Oklahoma Memorial Hospital, the Child Study Center and the O'Donoghue Rehabilitation Institute. 63 O.S. Supp. 1998, §3202[63-3202](1).
¶ 8 The Authority is charged with providing indigent care in Oklahoma:
 The University Hospitals Authority, by receiving the assets and operating obligations, shall ensure that the costs of delivering medically indigent care continue to be subsidized in excess of the state reimbursement for the medically indigent, consistent with the teaching hospitals' past policy and performance and that of the University of Oklahoma Health Sciences Center. The Authority shall make or cause to be made every reasonable effort to continue the hospitals' historic commitment to the provision of uncompensated care and that the allocation and investment of resources shall be made with a view to maximizing the hospitals' long-term ability to provide uncompensated care, except as may be modified by changes in federal or state law. The University Hospitals Authority shall ensure that indigent care provided by the Oklahoma Medical Center during a fiscal year shall be equal to or exceed one hundred twenty percent (120%) of the annual appropriation to the University Hospitals Authority for indigent care. The level of indigent care provided shall be based on Medicare costs as determined by the most recent report filed by any operating entity of the University Hospitals with the federal Health Care Finance Administration.
63 O.S. Supp. 1998, § 3203[63-3203](C).
¶ 9 "Indigent care" is defined as follows:
 As used in this section, "indigent care" means charity care, Medicaid contractual allowances, all debt arising from accounts for which there is no third-party coverage including services provided to the Department of Corrections pursuant to Section 3-701 of Title 43A of the Oklahoma Statutes and Department of Mental Health and Substance Abuse Services as otherwise required by law. For purposes of this subsection, third-party coverage shall not include Medicaid coverage.
63 O.S. Supp. 1998, § 3204[63-3204](D). By virtue of this statute, 63O.S. Supp. 1998, § 3203[63-3203](D) must be read in conjunction with 43AO.S. Supp. 1998, § 3-701[43A-3-701].
¶ 10 Pursuant to 63 O.S. Supp. 1998, § 3226[63-3226], the Authority can lease the real property of the Authority to the University Hospital Trust ("the Trust"), which was created at 63 O.S. Supp.1998, § 3224[63-3224]. The power to lease is contingent upon the execution of an operation and lease agreement with an entity authorized to do business in Oklahoma.
¶ 11 An agreement has been entered into with HCA Health Services of Oklahoma, d/b/a/ Presbyterian Hospitals which has been approved by the Oklahoma Supreme Court, In re UniversityHospitals Authority, 953 P.2d 314 (Okla. 1997):
 In a separate "Indigent Care Agreement" HCA has agreed with the Authority to provide indigent care at all HCA hospitals. HCA agrees to provide care at costs defined in the Agreement in return for the Authority's promise to pay to HCA the amounts appropriated for indigent care by the Legislature.
Id. at 318, ¶ 8. However, while the Authority has entered into an operation and lease agreement with the Trust, which has in turn entered into an operation and lease agreement with HCA, the Authority has the responsibility to see that its statutory obligations are met. 63 O.S. Supp. 1998, § 3203[63-3203](C).
 III.
¶ 12 The cardinal rule of statutory construction is to ascertain legislative intent and give effect to every provision,Kratz v. Kratz, 905 P.2d 753, 755 (Okla. 1995), and, intent is ascertained from the whole act, City of Bethany v. PublicEmployees Relations Board, 904 P.2d 604, 609 (Okla. 1995). Statutory construction is not necessary if the legislative intent is clearly expressed, In re Estate of Flowers, 848 P.2d 1146,1151 (Okla. 1993); and, if legislative intent is clearly expressed, the ordinary meaning of the statutory language will control, Oklahoma Association for Equitable Taxation v. OklahomaCity, 901 P.2d 800, 803 (Okla. 1995). Words or phrases are to be understood in the context of the statute as a whole. In reEstate of Little Bear, 909 P.2d 42 (Okla. 1995).
¶ 13 The sentence in Section 3-701 which reads that "[t]he hospital services provided by Griffin Memorial Hospital and the University Hospitals shall be without cost to the Department of Corrections" is not ambiguous and therefore requires no interpretation.
¶ 14 The problem which gave rise to your question devolves from the Legislature's use of the word "shall" in that part of Section 3-701 which reads that "[t]he Department of Mental Health and Substance Abuse Services may refer to the University Hospitals, and the latter shall accept those correctional inmate patients who are beyond the facilities and professional capability of Griffin Memorial Hospital." (Emphasis added.) The question then becomes which agency bears the financial burden when constitutionally required medical treatment of an inmate is beyond the facilities and professional capability of the University Hospitals.
¶ 15 The use of the word "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must," requiring interpretation as a command. Fuller v. Odom,741 P.2d 449, 453 (Okla. 1987). However, the words "shall" and "must" can be construed to mean "may." Minie v. Hudson,934 P. 2d 1082, 1085, n. 13 (Okla. 1997). The test for when the word "shall" can be construed not to be imperative is:
 [W]hen [1] no right or benefit depends upon the imperative use, or [2] when no public or private right is lost, or [3] when such construction is necessary to prevent the infliction of wrong or the interference with a vested right, etc. On the other hand, it appears that if public policy is in favor of the imperative meaning, the words referred to will be held mandatory.
In re Vrooman's Estate, 240 P.2d 754, 756 (Okla. 1952).
¶ 16 Under this test there will be situations in which this statute does not mandate that University Hospitals accept correctional inmates as patients. For example, when the constitutionally required level of services are not available at University Hospitals, the Hospitals do not have to accept the patient. The question as to when and under what circumstances University Hospitals are not required to accept a particular inmate then becomes a fact question to be determined on a case-by-case basis and is therefore beyond the scope of an Attorney General Opinion. 74 O.S. Supp. 1998, § 18b[74-18b](A)(5).
¶ 17 When the University Hospitals do not accept a correctional inmate as a patient, and the Department of Corrections ("the Department") has a constitutional obligation to provide the treatment needed, the Department must look elsewhere to provide the care. In those instances, the Department must pay for the required treatment. The statute speaks only to those services which are performed by Griffin Memorial Hospital or by the University Hospitals, and is silent as to payment for services performed elsewhere. There is no statutory authority to shift the cost of the services from the Department to Griffin or the University Hospitals when the services cannot be provided at Griffin or by the University Hospitals.
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
 To the extent medical treatment is required by law, theUniversity Hospitals, under the provisions of 43A O.S. Supp.1998, § 3-107[43A-3-107], must accept those correctional inmate patientsthat are beyond the facilities and professional capability ofGriffin Memorial Hospital who have been properly referred toGriffin by the Department of Corrections. Acceptance of an inmateas a patient is not required, however, when the UniversityHospitals lack the staff, equipment or expertise. Title 43AO.S. Supp. 1998, § 3-701[43A-3-701] does not provide for situations whentreatment is rendered outside Griffin Memorial Hospital andUniversity Hospitals. Whether University Hospitals might not berequired to accept a correctional inmate as a patient due to lackof staff, equipment or expertise is a question of fact whichcannot be answered in an Attorney General Opinion. Only thosehospital services performed by Griffin and the UniversityHospitals, however, are statutorily required to be at no cost tothe Department of Corrections. 43A O.S. Supp. 1998, § 3-701[43A-3-701]
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
CHARLES K. BABB ASSISTANT ATTORNEY GENERAL